**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DEBRA LEA WILSON,<br>*Appellant*,<br><br>v.<br><br>JAMES RIGBY; FIRST CITIZENS<br>BANK,<br>*Appellees*. | No. 17-35716<br><br>D.C. No.<br>2:16-cv-01684-RAJ<br><br>OPINION |

Appeal from the United States District Court
for the Western District of Washington
Richard A. Jones, District Judge, Presiding

Argued and Submitted June 8, 2018
Seattle, Washington

Filed November 27, 2018

Before: Jay S. Bybee and N. Randy Smith, Circuit Judges,
and Paul C. Huck,[*] District Judge.

Opinion by Judge N.R. Smith;
Dissent by Judge Huck

---

[*] The Honorable Paul C. Huck, United States District Judge for the
U.S. District Court for Southern Florida, sitting by designation.

# SUMMARY[**]

## Bankruptcy

The panel affirmed the district court's decision affirming the bankruptcy court's refusal to permit a Chapter 7 debtor to amend a bankruptcy schedule to reflect a post-petition increase in the value of property that was the subject of a homestead exemption under Washington law.

The panel held that the debtor's claimed exemption was limited to the amount to which she was entitled under Washington law as of the petition date because, whether claiming federal or state law exemptions, the value of the exemption is fixed by reference to the date of the filing of the bankruptcy petition. Declining to decide whether the definition of the value of exemptions in 11 U.S.C. § 522(a)(2) applies to state law exemptions as well as to federal ones, the panel concluded that § 541(a)(1) makes clear that the debtor's interests in property transfer to the bankruptcy estate as of the commencement of the bankruptcy action. Following this transfer, any appreciation enures to the bankruptcy estate. Distinguishing cases involving California's homestead statute, the panel held that, under Washington law, the debtor's exemption was limited to her equity in the property as of the date of her bankruptcy petition.

Dissenting, District Judge Huck wrote that binding Ninth Circuit precedent mandated that when a homestead appreciates in value post-petition, a debtor is entitled to

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

amend her homestead exemption claim to include a portion of that appreciation in order to exempt from the bankruptcy estate the maximum amount permitted by state or federal law applicable on the petition date. Judge Huck wrote that the only property subject to exemptions is that which becomes part of the estate. Because post-petition appreciation is an estate asset, it is subject to the maximum applicable homestead exemption irrespective of the amount of the exemption initially claimed by the debtor.

## COUNSEL

Larry B. Feinstein (argued), Vortman & Feinstein, Bellevue, Washington, for Appellant.

Thomas S. Linde (argued) and Michael M. Sperry, Schweet Linde & Coulson PLLC, Seattle, Washington; Denice E. Moewes, Wood & Jones P.C., Seattle, Washington; for Appellees.

Jon Erik Heath (argued), San Francisco, California, for Amici Curiae National Association of Consumer Bankruptcy Attorneys and National Consumer Bankruptcy Rights Center.

## OPINION

N.R. SMITH, Circuit Judge:

The filing date of a bankruptcy petition determines the law governing exemptions and freezes the value of the exemptions that the debtor may claim. Because Debra Wilson's amended bankruptcy schedules sought to claim

more than Washington law permitted her to claim as of the petition date, we affirm the district court's decision, limiting her claimed exemption to the amount she was entitled to under Washington law as of the petition date.

## I.

Wilson filed her voluntary Chapter 7 petition for bankruptcy on December 18, 2013. In her initial Schedule C, Wilson elected to take the federal exemptions and listed the "wildcard" exemption. At the time the petition was filed, Wilson's one-bedroom condominium was valued at $250,000 and was subject to a $246,440 mortgage. Accordingly, Wilson listed the value of her exemption as $3,560, equal to the equity in her home as of the petition date. During the pendency of the bankruptcy, the value of the property increased. On July 18, 2016, Wilson amended her Schedule C, claiming "100% of fair market value, up to any applicable statutory limit," listing the value of the property at $412,500. The amended schedule listed Washington's homestead exemption as the basis for the amended exemption. The Trustee, James Rigby, and the Bank, First-Citizens Bank & Trust Co., opposed the amendments. After oral argument, the bankruptcy court held that an amendment to update the value of an exemption in light of post-petition changes in value was not permitted. Accordingly, the court held that Wilson could not claim more than $3,560 in the property. Wilson appealed to the district court, and the district court affirmed the bankruptcy court. This appeal timely followed.

## II.

We review the scope of bankruptcy exemptions de novo. *See Lieberman v. Hawkins* (*In re Lieberman*), 245 F.3d 1090,

1091 (9th Cir. 2001). Likewise, we independently review the bankruptcy court's decision without deference to the district court's decision. *Rosson v. Fitzgerald* (*In re Rosson*), 545 F.3d 764, 770 (9th Cir. 2008).

## III.

A debtor's exemptions have long been fixed at "the date of the filing of the [bankruptcy] petition." *White v. Stump*, 266 U.S. 310, 313 (1924); *Wolfe v. Jacobson* (*In re Jacobson*), 676 F.3d 1193, 1199 (9th Cir. 2012) ("Under the so-called 'snapshot' rule, bankruptcy exemptions are fixed at the time of the bankruptcy petition."). This rule determines not only what exemptions a debtor may claim, it also fixes the value that a debtor is entitled to claim in her exemptions. *Gebhart v. Gaughan* (*In re Gebhart*), 621 F.3d 1206, 1211 (9th Cir. 2010) (noting the well-settled holding in this circuit "that what is frozen as of the date of filing the petition is the value of the debtor's exemption, not the fair market value of the property claimed as exempt"); *see also Hyman v. Plotkin* (*In re Hyman*), 967 F.2d 1316, 1321 (9th Cir. 1992) ("Were we to accept the Hymans' argument that they're entitled to post-filing appreciation, we would also have to hold that a debtor is subject to post-filing *de*preciation, which would give debtors in falling property markets less than the $45,000 guaranteed them by state law. Nothing in the bankruptcy law compels (or even suggests) such a drastic interference with the operation of the state homestead exemption statute. In fact, our caselaw strongly suggests the opposite result." (emphasis in original)).

This rule is rooted not only in our precedent but in the bankruptcy code itself. It is expressly identified in 11 U.S.C. § 522(a)(2), which defines the "value" of exemptions for

purposes of § 522 as "fair market value as of the date of the filing of the petition or, with respect to property that becomes property of the estate after such date, as of the date such property becomes property of the estate." *See id.* Amici assert that this definition of value applies only to the federal exemptions listed in § 522(d) and lien avoidance in § 522(f) and not to state law exemptions that may be claimed pursuant to § 522(b)(3)(A), because the term "value" is not used in § 522(b)(3)(A). We need not decide whether Amici are correct on this point, because 11 U.S.C. § 541(a)(1) makes clear that "all legal or equitable interests of the debtor in property" transfer to the bankruptcy estate "*as of the commencement of the case.*" *Id.* (emphasis added). This transfer of interest is subject to the debtor's exemptions under § 522(b)(1), but the reference point for such exemptions is the commencement of the bankruptcy action. Following this transfer, all "[p]roceeds, product, offspring, rents, or profits" enure to the bankruptcy estate. *Id.* § 541(a)(6). This includes the appreciation in value of a debtor's home. *E.g.*, *Schwaber v. Reed* (*In re Reed*), 940 F.2d 1317, 1323 (9th Cir. 1991) (interpreting 11 U.S.C. § 541(a)(6) "to mean that appreciation enures to the bankruptcy estate, not the debtor"). Accordingly, whether claiming federal or state law exemptions, the value of the exemption is fixed by reference to the date of the filing of the bankruptcy petition.

## IV.

However, Wilson and Amici assert that a closer look at the facts underlying earlier Ninth Circuit precedent reveals that we have consistently allowed debtors to benefit from the

post-petition appreciation of their homestead.[1] We have not; let us explain.

The first set of cases cited by Wilson and Amici involved California's homestead statute, which differs in material respects from Washington's statute. Under California law, every debtor is entitled to claim an exemption with a fixed dollar value, based on demographic criteria—not home equity. *See, e.g.*, *Alsberg v. Robertson* (*In re Alsberg*), 68 F.3d 312, 314 (9th Cir. 1995); Cal. Civ. Proc. Code § 704.730.[2] By contrast,

---

[1] The dissent makes these same arguments; we again reject them.

[2] The full text of California's current statute, which has only changed in terms of the value assigned to the various demographic categories since our decision in *Alsberg*, reads as follows:

(a) The amount of the homestead exemption is one of the following:

(1) Seventy-five thousand dollars ($75,000) unless the judgment debtor or spouse of the judgment debtor who resides in the homestead is a person described in paragraph (2) or (3).

(2) One hundred thousand dollars ($100,000) if the judgment debtor or spouse of the judgment debtor who resides in the homestead is at the time of the attempted sale of the homestead a member of a family unit, and there is at least one member of the family unit who owns no interest in the homestead or whose only interest in the homestead is a community property interest with the judgment debtor.

(3) One hundred seventy-five thousand dollars ($175,000) if the judgment debtor or spouse of the judgment debtor who resides in the homestead is at the

Washington applies a sliding scale in which "the homestead

> time of the attempted sale of the homestead any one of
> the following:
>
> (A) A person 65 years of age or older.
>
> (B) A person physically or mentally disabled who as a
> result of that disability is unable to engage in
> substantial gainful employment. There is a rebuttable
> presumption affecting the burden of proof that a person
> receiving disability insurance benefit payments under
> Title II or supplemental security income payments
> under Title XVI of the federal Social Security Act
> satisfies the requirements of this paragraph as to his or
> her inability to engage in substantial gainful
> employment.
>
> (C) A person 55 years of age or older with a gross
> annual income of not more than twenty-five thousand
> dollars ($25,000) or, if the judgment debtor is married,
> a gross annual income, including the gross annual
> income of the judgment debtor's spouse, of not more
> than thirty-five thousand dollars ($35,000) and the sale
> is an involuntary sale.
>
> (b) Notwithstanding any other provision of this section,
> the combined homestead exemptions of spouses on the
> same judgment shall not exceed the amount specified in
> paragraph (2) or (3), whichever is applicable, of
> subdivision (a), regardless of whether the spouses are
> jointly obligated on the judgment and regardless of
> whether the homestead consists of community or
> separate property or both. Notwithstanding any other
> provision of this article, if both spouses are entitled to
> a homestead exemption, the exemption of proceeds of
> the homestead shall be apportioned between the
> spouses on the basis of their proportionate interests in
> the homestead.

Cal. Civ. Proc. Code § 704.730.

exemption amount shall not exceed the *lesser* of (1) the total net value of the [homestead] . . . or (2) the sum of one hundred twenty-five thousand dollars . . . ." Wash. Rev. Code § 6.13.030 (emphasis added).

In both California and Washington, the value of the homestead must be fixed as of the date of the bankruptcy petition. In California, the value of the homestead is always a defined statutory figure. *See* Cal. Civ. Proc. Code § 704.730. However, in Washington, the value is tied to the equity in the debtor's home as of the date of the filing of the petition. *See* Wash. Rev. Code § 6.13.030. Because the value that can be claimed in California is determined by demographic criteria, the homestead amount claimed at filing may exceed home equity on that petition date. *See Alsberg*, 68 F.3d at 313–14 (noting that under California law "in effect at the time of filing [the debtor] was entitled to claim a homestead exemption of $45,000 on the residence" where the home equity at the time of filing was only $33,875). If the home subsequently appreciates, it enures to the California debtor up to the amount she was entitled to claim under California law *on the petition date. See id.* at 313–15 (affirming the BAP's determination that, upon the sale of the home, the California debtor was entitled to the full $45,000 exemption even though the equity at the time of the filing was less than this amount). Accordingly, our cases (that appear to allow California debtors to obtain post-petition appreciation) have merely allowed the debtors to receive the full value of the homestead exemption that they were entitled to claim *as of the petition date. See, e.g., id.*; *Hyman*, 967 F.2d at 1321.[3]

---

[3] Some of the confusion in this area may stem from the language in our cases noting that the homestead exemption does not come into play until the time of a sale. *Alsberg*, 68 F.3d at 315 (citing *Hyman*, 967 F.2d

Applying Washington law, Wilson is again entitled to the full value of the homestead exemption she could legally claim as of the petition date. However, Washington, unlike California, limits a debtor's exemption to the equity in her home. Here, there is no dispute that the "net value" of Wilson's home at the time she filed bankruptcy was the $3,560. That amount was all that Washington's exemption statute permitted her to exempt. The fact, that some debtors in our California cases were permitted to exempt more than the equity in their homes on the date of their bankruptcy petitions, does not establish Wilson's entitlement to do the same in Washington. Each state is entitled to set the parameters for its homestead exemption, but in all cases a debtor is limited to the value that may lawfully be claimed on the petition date.

Wilson and Amici next cite *Klein v. Chappell* (*In re Chappell*), 373 B.R. 73 (B.A.P. 9th Cir. 2007), *aff'd sub nom. In re Gebhart*, 621 F.3d 1206. In *Chappell*, the BAP identified the rule that we reaffirm here, noting that "exemptions are determined on the date of the bankruptcy and without reference to subsequent changes in the character or value of the exempt property." *Id.* at 77 (alterations in original omitted) (quoting *Culver, LLC v. Chiu* (*In re Chiu*), 266 B.R. 743, 751 (B.A.P. 9th Cir. 2001), *aff'd*, 304 F.3d 905 (9th Cir. 2002)). The issue in *Chappell* did not involve the

---

at 1321). Wilson urges that this language means that the value that she is entitled to claim as exempt is determined by reference to the sale date, rather than the petition date. Wilson misreads our cases. We have been clear that, although a debtor only realizes the exempted value at the time of sale, her exemption is fixed by the petition date. *Hyman*, 967 F.2d at 1321 (noting that determining value as of the sale date would subject debtors in a down market to post-petition depreciation and holding that this would be inconsistent with our precedent).

debtor's entitlement to post-petition appreciation up to the statutory maximum, because the trustee had waived that issue. *Id.* at 78, 82. The case instead involved whether the bankruptcy estate retains an interest in the debtor's home where the value of the debtor's homestead exemption equals or exceeds the equity in the home. *See id.* at 75–76. Consistent with our cases, the BAP held that the debtor's interest in the home was limited to the dollar value exemption claimed. *See id.* at 83. Also, consistent with our cases, the BAP held that the bankruptcy estate retains an interest in the debtor's home such that post-petition appreciation enures to the bankruptcy estate. *See id.*

Lastly, Wilson and Amici rely on *Woodson v. Fireman's Fund Insurance Co.* (*In re Woodson*), 839 F.2d 610 (9th Cir. 1988). *Woodson* involved an entirely distinct issue from the one presented here, namely the difference between a debtor's right to exempt the ownership interest in a life insurance policy and the debtor's exemption rights in life insurance proceeds. *Id.* at 617–20. We expressly determined that the policy and the proceeds were two different assets governed by two different exemptions. *Id.* Because the proceeds asset did not exist at the time the petition was filed, the debtor was entitled to claim an exemption in the proceeds at the time he received them. *Id.* at 621 (permitting the debtor to retain only that portion of the proceeds, if any, that he was entitled to exempt under California law). Unlike the two distinct assets at issue in *Woodson*, Wilson's home is the only asset. The value of that asset may change over time, but it is not constantly subject to a new round of exemptions as the value goes up or down.

V.

Wilson asserts that our holding will lead to debtors routinely overvaluing their homes on their bankruptcy schedules. We remind Wilson that the debtor must act in good faith, and that nothing about the debtor's valuation of the home listed on the schedule is binding on the trustee. *Cf. Schwab v. Reilly*, 560 U.S. 770, 782–83 (2010) (Subsection 522(b) "does not define the 'property claimed as exempt' by reference to the estimated market value . . . ." (emphasis omitted)). If the homestead exemption at issue is tied to the equity in a home, the trustee will have the burden to examine the claimed amount to make certain that the trustee need not object and establish that the claimed exemption is improper.

Here, Wilson is barred from receiving a $125,000 exemption because the trustee timely opposed her amended exemption. The record is undisputed that the actual equity in her home on the petition date was $3,560. The date of the petition is the relevant time frame for valuing the exemption, and Washington law limits the homestead exemption to a debtor's equity.

**AFFIRMED.**

---

HUCK, District Judge, dissenting:

The majority's summation of the relevant facts is accurate and not in dispute. But the majority's conclusion that debtor Wilson's proposed amended bankruptcy schedules sought to claim more than Washington's homestead exemption law

permits is, in my view, an incorrect application of Ninth Circuit precedent. For this and other reasons, I would reverse.

This case presents two issues. First, may Wilson exempt a portion of her homestead property's appreciation which accrued postpetition by increasing her homestead exemption claim to the maximum amount authorized by Washington law? And second, if so, may she amend her existing homestead exemption claim in order to obtain a portion of that appreciation? Based upon this court's binding precedent, as well as the most fundamental bankruptcy principles applicable to establishing the extent of a debtor's homestead exemption, the answer to both questions is yes.

To begin, this court must analyze these issues through the prism of three fundamental principles: first, that bankruptcy's goal to grant the honest but unfortunate debtor a fresh start is best served by liberally construing homestead exemptions in favor of debtors, *see Schwab v. Reilly*, 560 U.S. 770, 791 (2010); second, that bankruptcy courts lack authority to deny an exemption for any reason not specified in the Bankruptcy Code ("Code"), *see Law v. Siegel*, 134 S. Ct. 1188, 1197 (2014); and third, that amendments to bankruptcy schedules, including those declaring homestead exemptions, are permitted as of right, *see Martinson v. Michael (In re Michael)*, 163 F.3d 526, 529 (9th Cir. 1998), *abrogated on other grounds by Law,* 134 S. Ct. at 1188. That these fundamental principles apply here is beyond dispute.

More importantly, binding and on-point Ninth Circuit precedent mandates that when a homestead appreciates in value postpetition, a debtor is entitled to amend her homestead exemption claim to include a portion of that appreciation in order to exempt from the bankruptcy estate

the maximum amount permitted by state or federal law applicable on the debtor's filing date. That precedent controls here and requires reversal.

## I. Binding Precedent

### A. *Alsberg*

*Robertson v. Alsberg (In re Alsberg)*, 161 B.R. 680 (B.A.P. 9th Cir. 1993), affirmed by this court in *Alsberg v. Robertson (In re Alsberg)*, 68 F.3d 312 (9th Cir. 1995), is directly on point. In *Alsberg*, the debtor's homestead property was appraised at $259,000 when he filed for bankruptcy, which amount was less than the deed of trust lien ($225,125) and tax liens ($86,000) encumbering the property. At the time, California's maximum homestead exemption was $45,000. Apparently because Alsberg believed that there was no equity in the homestead, he did not claim a homestead exemption in his schedules. However, postpetition, the homestead appreciated in value and the trustee sold it, netting $121,000. After the sale, Alsberg amended his B-4 schedule to claim the $45,000 maximum California exemption. Alsberg then argued that the trustee was required to abandon the full $121,000 because at filing there was no equity in his homestead property for creditors, and therefore, the estate never had any interest in the property. Alsberg thus "asserted that he was entitled to any appreciation in the value of the Property during the pendency of the case." *In re Alsberg,* 161 B.R. at 682. On the other hand, the trustee asserted that Alsberg could not receive any exemption because there was no equity in the property when Alsberg filed or, alternatively, that Alsberg's exemption was capped at $33,875—less than the full $45,000 California homestead exemption—because at filing that was the amount of equity in excess of the deed

of trust.[1] The bankruptcy court disagreed with both parties and found that Alsberg was entitled to a full homestead exemption of $45,000, which amount included a portion of the property's postpetition appreciation, "**because the amount allowable as a homestead is determined when property is sold.**" *Id.* (emphasis added).

The bankruptcy appellate panel ("BAP") affirmed. *Id.* The BAP specifically framed the issue as "[w]hether the trial court correctly held that the appreciation in the value of the Property during the pendency of the bankruptcy case belonged to the estate, not to Alsberg." *Id.* Finding that postpetition appreciation initially vested in the estate, the BAP made the logical subsequent finding: to the extent an applicable exemption exists, postpetition appreciation, an estate asset, will be exempted back out of the estate. *Id.* at 683. Rejecting Alsberg's claim to all of the postpetition appreciation, the BAP held: "The Property did become property of Alsberg's estate. [Debtor's] claim of an exemption only allows him to take back out of the estate the property representing his exemption." *Id.* (alteration added). Then under the heading "Entitlement to Appreciation," the BAP discussed who is entitled to appreciation, and in what proportions, noting that there were three possible options:

> [W]e decide only how much of the remaining [sale] proceeds Alsberg is entitled to receive versus how much the estate is entitled to receive . . . . [The options are:]

---

[1] The bankruptcy court did not consider the tax liens in its calculation of Alsberg's homestead equity. *In re Alsberg*, 161 B.R. at 684 ("We are not deciding whether Alsberg's homestead exemption takes priority over either of the tax lien claims. That issue will be determined separately.").

1.   Alsberg gets $33,875, the difference between the value of the Coast Savings lien and the value of the Property as of the date Alsberg filed bankruptcy;

2.   Alsberg gets $45,000, the full statutory amount of his homestead exemption; or

3.   Alsberg gets the full $121,000 because, when he filed bankruptcy, the Coast Savings lien plus his homestead exemption exceeded the value of the Property.

Not surprisingly, the Trustee argues for option number 1 and Alsberg argues for option number 3. The trial court adopted option number 2 and we affirm.

*Id.* at 684. In relevant part, the BAP unequivocally held:

We agree with the trial court's analysis of the Ninth Circuit's decisions in *In re Hyman*, 967 F.2d 1316 (9th Cir. 1992) and *In re Reed*, 940 F.2d 1317 (9th Cir. 1991), which hold that the bankruptcy estate, and not the debtor, is entitled to post-petition appreciation in estate assets ***and that the amount of the debtor's homestead exemption is determined when the subject property is sold rather than being fixed as of the date the debtor files bankruptcy***. *See Hyman*, 967 F.2d at 1321; *Reed*, 940 F.2d at 1323.

*Id.* (emphasis added) (footnote call numbers omitted).

As shown by the above quote, the BAP, affirmed by this court, relied on *In re Hyman*, 967 F.2d 1316 (9th Cir. 1992), to hold that the homestead exemption amount is determined at the time of sale. *Id*. In *Hyman*, the debtor contended that his homestead was not an estate asset because its full equity on his filing date was exempt. *In re Hyman*, 967 F.2d at 1321. In rejecting the debtor's contention, this court stated: "[t]he California statute gives the Hymans a $45,000 exemption as of the time of sale, not a $45,000 equity in the property . . . . ***The debtor's right to use the exemption comes into play not upon the filing of the petition, but only if and when the trustee attempts to sell the property***."[2] *In re Alsberg*, 68 F.3d at 314 (quoting *In re Hyman*, 967 F.2d at 1321) (emphasis added). Applying this principle, the *Alsberg* court explained: "Alsberg's California homestead exemption can be realized only from the net proceeds of sale received by the estate . . . . When Alsberg subsequently filed a claim for a $45,000 homestead exemption after the sale of the property, ***he became entitled to $45,000 of the proceeds***, and no more." *Id*.

The facts in *Alsberg* are materially and legally indistinguishable from the facts here. However, the majority challenges *Alsberg*'s authority, asserting that California's homestead exemption scheme is materially different from Washington's. The majority posits that California's exemption entitles every debtor to "claim an exemption with a fixed dollar value, based on demographic criteria—not home equity" and "is always the statutory figure." The

---

[2] And as will be discussed more fully below, the actual amount of a debtor's exemption, under California law, as with all capped exemption laws, will always be determined by the lesser of the exemption cap or the net proceeds from the sale.

majority asserts this is in contrast to Washington's homestead exemption, which is materially different because it is "tied to the equity in the debtor's home." This argument fails for at least three reasons.

First, the distinction which the majority draws between the Washington and California statutes is illusory because even though the wording used in each is somewhat different, that is a difference without legal significance. In fact, the majority's attempt to distinguish California's exemption because it is "based on demographic criteria—not home equity" seems to be fashioned from whole cloth. The majority cites no case, nor have I found any, that has even mentioned, much less relied on, such a distinction or any other meaningful distinction.

To the contrary, there is, in my view, no meaningful basis for treating California's capped homestead exemption scheme differently from the federal and other state capped schemes. More importantly, this court has consistently concurred in that view. Ninth Circuit caselaw is clear that the legal principles applicable to the treatment of the homestead's postpetition appreciation, which were first established in cases arising out of California's exemption statute, are equally applicable to all other capped exemption statutes.

In *In re Gebhart*, a consolidated appeal,**[3]** this court made clear that its precedential principles regarding how exempt property is defined and treated, including treatment of postpetition appreciation as an estate asset subject to the full homestead exemption, are not specific to or limited by any unique feature of the California exemption statute, as the majority contends. *See In re Gebhart*, 621 F.3d 1206, 1211 (9th Cir. 2010). Rather, these principles apply to "all statutes that limit the value of an exemption to an 'interest' in property capped at a dollar value," such as Arizona's, California's, Washington's, and the Code's. *Id.* Thus, all capped homestead exemption statutes do not exempt the homestead property itself, but rather a capped portion of its equity value, and are subject to the same homestead exemption principles and analysis. In full, this court explained:

> A number of our cases have held that, under the California exemption scheme, the estate is entitled to postpetition appreciation in the value of property a portion of which is otherwise exempt. *See Alsberg v. Robertson (In re Alsberg),* 68 F.3d 312, 314–15 (9th Cir.1995); *Hyman,* 967 F.2d at 1321;

---

**[3]** As discussed further below, in *Gebhart*, this court affirmed the BAP in one case and the district court in another case. *See Klein v. Chappell (In re Chappell)*, 373 B.R. 73 (B.A.P. 9th Cir. 2007), *aff'd sub nom In re Gebhart*, 621 F.3d 1206 (9th Cir. 2010); *see also Gebhart v. Gaughan (In re Gebhart)*, No. 07-CV-193-PHX-ROS (D. Ariz. Sept. 17, 2007), *aff'd* 621 F.3d 1206 (9th Cir. 2010). For purposes of this discussion, the underlying opinion in *Chappell* will be referred to as *Klein v. Chappell* and the underlying opinion in *Gebhart* will be referred to as *Gebhart v. Gaughan*. This court's opinion in the consolidated case will be referred to as *Gebhart*.

*Schwaber v. Reed (In re Reed),* 940 F.2d
1317, 1323 (9th Cir.1991); *see also Viet Vu v.
Kendall (In re Viet Vu),* 245 B.R. 644, 647–48
(9th Cir.BAP2000).

**The fact that the cases cited above dealt
with exemptions claimed under California's
statutory exemption scheme does not limit
their applicability to the cases at bench,
where exemptions were claimed under
Arizona and federal statutes.** *Reilly* has
reaffirmed certain of the underlying principles
in these cases and clarified that, with respect
to how exempt property is defined, their
reasoning is applicable not just to California's
exemption scheme, but to all statutes that
limit the value of an exemption to an
"interest" in property capped at a dollar value.
Moreover, this court's past position on
postpetition appreciation is based not solely
on the California statute defining exempt
property but also on 11 U.S.C. § 541(a)(6)
(including as property of the estate
"[p]roceeds, product, offspring, rents, or
profits of or from property of the estate ..."),
which is equally applicable to the cases at
issue here. *See In re Reed,* 940 F.2d at 1323;
*In re Viet Vu,* 245 B.R. at 649.

*Id.* (emphasis added). Therefore, it cannot be that *Alsberg* and
other Ninth Circuit cases involving California's homestead
exemption scheme are legally distinguishable as the majority
posits because, as acknowledged by *Gebhart*'s clear
language, all capped homestead exemption schemes,

including Washington's, are treated the same. *See also Klein v. Chappell (In re Chappell)*, 373 B.R. 73, 75 (B.A.P. 9th Cir. 2007) ("Under well-settled Ninth Circuit law, any postpetition appreciation in value in the residence in excess of the maximum amount permitted by the exemption statute invoked inures to the benefit of the estate. The use of federal exemptions does not work to change that result."). The federal homestead exemption statute was at issue in *Klein v. Chappell* and the Arizona statute in *Gebhart v. Gaughan*, yet, on review, this Court relied on Ninth Circuit cases analyzing California's homestead exemption scheme to hold that these non-California debtors were entitled to retain the postpetition appreciation in their homesteads up to the statutory exemption caps. *See Gebhart*, 621 F.3d at 1211 (analyzing *Alsberg, Hyman, Reed,* and *Vu*). Thus, this court does not make the distinction which the majority posits.[4]

Indeed, this court, when discussing whether a California debtor may obtain postpetition appreciation beyond the statutory exemption cap, noted the obvious similarity among all capped exemption statutes by placing them in the same exemption category and without drawing any distinction among them: "Of the nine states in the Ninth Circuit, seven limit the dollar amount of the homestead allowance (Alaska, Arizona, California, Idaho, Montana, Nevada, and Washington), while two limit both the dollar and the acreage

---

[4] The demographic criteria in California's homestead exemption, upon which the majority places much emphasis, is irrelevant here because it merely sets forth different exemption caps based on the different characteristics of the individual or individuals claiming the exemption. Cal. Civ. Proc. Code. § 704.730. For instance, an unmarried California debtor may claim $75,000, *see* Cal. Civ. Proc. Code. § 704.730(a)(1), but an unmarried California debtor who is over 65 years old may claim $175,000, *see* Cal. Civ. Proc. Code. § 704.730(a)(3)(A).

amounts of the homestead allowance (Hawaii and Oregon).” *In re Hyman*, 967 F.2d at 1319 n.3.

The majority grounds its argument for treating Washington's exemption differently than California's on the ground that Washington exempts the lesser of either the homestead's equity or $125,000. Thus, argues the majority, while Washington's exemption is tied to the homestead's equity, California's is not. While it is true that the California statute does not specifically mention an equity limitation, that is of neither legal nor economical consequence. That is because in actual practice, and as a matter of basic economics, bankruptcy courts in California must, as do all states with a capped exemption, always cap the exemption at the lesser of the homestead's net equity or the designated maximum because the actual exempted amount will always be limited to, and can only be paid from, the net proceeds from the sale of the homestead. *See In re Bruton,* 167 B.R. 923, 926 (Bankr. S.D. Cal. 1994). Thus, California's exemption statute actually means, as does Washington's, that the debtor's exemption amount is the lesser of either the homestead's net proceeds at sale or the capped maximum amount.

In its attempt to distinguish Washington's exemption from California's, the majority also relies on dicta from *Hyman* stating that California *guarantees* debtors a specific homestead exemption amount. *In re Hyman*, 967 F.2d at 1321. Unlike taxes and death, however, nothing in California's homestead exemption scheme, nor in any other capped exemption scheme for that matter, guarantees any amount to the debtor. The only exemption guarantee in California, and again, as with all capped exemptions, is that debtors may only exempt and receive their homestead's

equity, if any, up to the maximum statutory exemption amount. This is obviously the case because regardless of the maximum exemption the law permits, a debtor may only receive the exemption amount from the net proceeds generated by the sale of the homestead. *In re Alsberg*, 68 F.3d at 315 ("Alsberg's California homestead exemption can be realized only from the net proceeds of sale received by the estate."); *see also In re Bruton,* 167 B.R. at 926 ("The amount that the debtor may claim as exempt for his homestead is $50,000 . . . . However, since Bruton has only $16,981 equity in the property absent HOA's lien, the available exemption for purposes of Bankruptcy Code § 522(f) is limited to $16,981."). Basic economic reality dictates that if the sale produces net proceeds in an amount less than the maximum homestead exemption, the debtor is limited to that lesser amount. Thus, *Hyman*'s statement, and the majority's reliance on it, that California debtors are *guaranteed* a $45,000 homestead exemption, aside from being pure dicta, cannot be accurate in the bankruptcy context.

Second, the majority's effort to distinguish Washington's homestead exemption statute from California's is also flawed because it ignores binding precedent involving exemption statutes other than California's. This precedent, arising in the consolidated *Gebhart* appeals involving federal and Arizona homestead exemption statutes, permits a debtor to increase the homestead exemption amount based on postpetition appreciation—as does California's statute. Like Washington's homestead exemption statute, the federal and Arizona statutes cap the homestead exemption at a specified maximum amount. As discussed in detail in the following section, the courts in both cases which *Gebhart* affirmed permitted debtors to claim increased homestead exemptions postpetition in order to take advantage of their properties' appreciation

under federal and Arizona statutes respectively. *See Gebhart,* 621 F.3d 1206. The federal homestead exemption statute is, like Washington's homestead exemption, clearly a "lesser of either" capped statute that limits the exemption to "aggregate interest, **not to exceed** $23,675 in value . . ." *See* 11 U.S.C. § 522(d)(1) (2018) (emphasis added) (footnote call number omitted). Arizona's homestead exemption statute, like Washington's, is also clearly a "lesser of either" capped statute as indicated by the phrase "not exceeding" preceding the specified cap. *See* Ariz. Rev. Stat. § 33-1101 (2018) ("Any person . . . who resides within the state may hold as a homestead exempt from attachment, execution, and forced sale, **not exceeding** one hundred fifty thousand dollars in value, any of the following . . .") (emphasis added).

This court is obligated to follow *Alsberg*, which clearly establishes that the amount of Wilson's homestead exemption is determined at sale, not at filing, and may include a portion of the homestead's postpetition appreciation regardless of what Wilson claimed in her initial schedules.

## B. *Gebhart*

Two other precedential cases adhering to *Alsberg* were consolidated in *Gebhart*, specifically, *Klein v. Chappell* and *Gebhart v. Gaughan*. *See Klein v. Chappell*, 373 B.R. at 73; *see also Gebhart v. Gaughan*, No. 07-CV-193-PHX-ROS. Although the facts of *Klein v. Chappell* (involving the federal exemption statute) and *Gebhart v. Gaughan* (involving Arizona's statute) are somewhat different than here, the relevant legal principle is not—debtors may exempt postpetition appreciation from the estate up to the statutory amount, but no more.

In *Gebhart*, this court framed the "primary issue" as "whether the Trustee's failure to object to the homestead exemption claim within the period allowed by statute resulted in the homestead property being withdrawn from the bankruptcy estate at that point." 621 F.3d at 1209. The court noted that the consolidated debtors' respective schedules at filing represented that there was no equity in the homestead properties and that the trustees were entitled to rely on debtors' representations. Therefore, this court rejected the debtors' contention that because trustees failed to timely object to their exemptions debtors' entire homestead properties, which had subsequently appreciated in value, were excluded from the estates, as opposed to only the capped homestead exemption amounts. *Id.* at 1210. This court instead held that the applicable homestead exemptions removed a specific dollar amount from the estate, not the property itself, leaving each trustee entitled to sell the homestead property notwithstanding his failure to timely object to the homestead exemption claim. *Id.* To put it simply, the principal holding of *Gebhart* is that a trustee is not bound by the debtor's schedules, including the debtor's evaluation of the homestead property, and therefore that the debtor cannot prevent the sale of appreciated homestead property if it has equity in excess of the maximum exemption amount. And particularly relevant here, it is noteworthy that this court affirmed the lower courts, each of which held that even though the debtor was not entitled to exempt the homestead property itself, the debtor was entitled to the full homestead exemption amount, a portion of which was based on postpetition appreciation of the property, in line with *Alsberg*. *Id*.

A closer analysis of the underlying cases in *Gebhart* is instructive to the issues presented here. In *Klein v. Chappell*,[5] when the husband and wife debtors filed they claimed that their homestead's fair market value was $350,000 subject to liens of $328,488, leaving $21,512 of equity, which they claimed as their federal homestead exemption. Thus, debtors' claimed homestead exemption was lower than $36,900, the maximum permitted under the Code. *See* § 522(d)(1). Two years after debtors received their discharge, but while their case remained open, the debtors' mortgagee moved to foreclose on the homestead property because the debtors had defaulted. In response, the trustee moved the bankruptcy court for permission to sell the homestead property because he felt that its value had substantially appreciated. The debtors argued that the homestead could not be sold because they, upon filing their petition, had exempted the entire equity interest in the property, leaving nothing for creditors. The debtors contended that by doing so they "withdr[e]w the entire fee from bankruptcy administration." *Klein v. Chappell*, 373 B.R. at 77. The bankruptcy court found for the debtors, but the BAP reversed. The BAP held that the debtors were limited to, but also now entitled to, the maximum homestead exemption amount ($36,900) from the sale proceeds, even though at filing they had claimed only their homestead's then equity of $21,512 and that the estate retained the remaining sale proceeds. *Id.* at 83. In doing so, the BAP held, in accordance with *Alsberg*: "Under well-settled Ninth Circuit law, any postpetition appreciation in value in the residence **in excess of the maximum amount**

---

[5] In an effort to avoid the precedential value of *Klein v. Chappell*, the majority states that it is a BAP case that is not binding on this court. The majority fails to take into account that *Klein v. Chappell* was completely affirmed by this court in *Gebhart. In re Gebhart*, 621 F.3d at 1212.

**permitted by the exemption statute** invoked inures to the benefit of the estate. The use of federal exemptions does not work to change that result." *Id.* (emphasis added). Moreover, a footnote emphasizes that very point. As the BAP explained:

> In *Alsberg, Hyman, Reed* and *Vu* the debtors claimed the maximum amount allowable by the California exemption scheme. In our case, the debtors limited their exemption to the difference between the value stated and the consensual liens, which was an amount substantially less than the maximum exemption available. While postpetition appreciation in value of property inures to the benefit of the estate, ***the estate's interest in the appreciation must be limited by the ability of the debtors to obtain the maximum value of their federal exemptions***. As was conceded by the trustee at oral argument, the debtors are jointly entitled to up to $36,900 (plus any available wildcard amount).

*Id.* at 81 n.7 (emphasis added). Thus, *Klein v. Chappell*, an opinion affirmed by this court, again confirms Wilson's position. There should be no doubt that *Klein v. Chappell* reaffirmed that in the Ninth Circuit, while the homestead and any appreciation in the homestead initially becomes estate property, that property is subject to the debtor's full homestead exemption, regardless of the amount of the debtor's claimed exemption or the homestead's equity when the petition is filed.

The majority contends that *Klein v. Chappell* is not precedential in that it does not involve a debtor's entitlement

to postpetition appreciation up to the statutory maximum because the trustee had "waived" that issue. To the contrary, the trustee, in accordance with what the BAP accurately termed "well-settled Ninth Circuit law," "*conceded*" that the debtor was entitled to the maximum exemption permitted by law. *See Klein v. Chappell*, 373 B.R. at 78, 82–83 (stating, "As the trustee **concedes**, the maximum exemption available under § 522(d)(1) is $36,900 . . ." and "As was **conceded** by the trustee at oral argument, the debtors are jointly entitled to up to $36,900 . . .") (emphasis added). There is an obvious and meaningful difference between an informed concession and a waiver. A concession involves accepting something as true or acknowledging defeat. A waiver, by contrast, is a voluntary relinquishment of a right, claim, or privilege. That the trustee, in the face of "well-settled Ninth Circuit law," conceded that the debtors were entitled to the maximum federal homestead exemption is significant. *Id.*

*Gebhart v. Gaughan*, the other underlying case, involves an Arizona debtor who on his bankruptcy schedules claimed that his homestead had a fair market value of $210,000 with liens totaling $120,297.[6] On filing, the debtor claimed a homestead exemption pursuant to Arizona's homestead exemption laws for his property's then equity of $89,703, less than the $100,000 maximum exemption permitted by Arizona law. Thus, as did Wilson here, Gebhart initially claimed less than the maximum exemption permitted by Arizona law because at filing there was insufficient equity to provide

---

[6] These facts are taken from the district court's unpublished opinion, which was not made a part of the record before this panel. This court may take judicial notice of the district court's unpublished opinion. *See McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1094 n.2 (9th Cir. 2004) (taking judicial notice of unpublished district court dismissal order).

revesting of the full allowable amount from the estate's sale of the homestead. As in *Hyman*, because the schedule facially reflected no equity in the homestead property in excess of the exemption claim, the trustee did not object to Gebhart's claimed exemption.

Three years after filing, the trustee determined that Gebhart's homestead had substantially appreciated in value and sought to appoint a real estate broker to sell it. Gebhart objected, contending that he was entitled to the entire property because at filing he claimed as his exemption the full equity then existing in the property, thereby leaving nothing for the estate, and the trustee had failed to object. The bankruptcy court granted the trustee's request over Gebhart's objections, holding that "a chapter 7 trustee is entitled to the proceeds from the sale of the debtors' exempt homestead **in excess of the exempt amount**" and that "the excess belongs to the bankruptcy estate for the benefit of creditors." *Gebhart v. Gaughan*, Case No. 07-CV-193-PHX-ROS at 2. The district court affirmed:

> Because appreciation belongs to the estate, the bankruptcy court did not err in allowing the Trustee to proceed with the sale of Appellant's homestead. Appellant will receive his homestead exemption upon sale of the home but the value of the home above that amount will be administered by the Trustee. *See In re Hyman*, 967 F.2d 1316, 1321 (9th Cir. 1992) (stating debtor entitled to payment of **full homestead exemption upon sale of home**).

*Id.* at 3 (emphasis added). Following its precedent, this court affirmed. *In re Gebhart*, 621 F.3d at 1212.

By affirming both lower courts' holdings, *Gebhart* faithfully followed *Alsberg*'s unambiguous teaching that:

> Under *Reilly*, an exemption claimed under a dollar-value exemption statute is limited to the value claimed at filing. **At least when the total fair market value of the property is in fact greater than the exemption limit at the time of filing,** *see* note 4, *supra*, **any additional value in the property remains the property of the estate**, regardless of whether the extra value was present at the time of filing or whether the property increased in value after filing . . . .

> A number of our cases have held that, under the California exemption scheme, the estate is entitled to postpetition appreciation in the value of property **a portion of which is otherwise exempt**. ***See Alsberg v. Robertson (In re Alsberg)*, 68 F.3d 312, 314–15 (9th Cir.1995)**; *Hyman*, 967 F.2d at 1321; *Schwaber v. Reed (In re Reed)*, 940 F.2d 1317, 1323 (9th Cir.1991).

*Id.* at 1211 (emphasis added).

## II. *Morgan*

Another case, *Straffi v. Morgan (In re Morgan)*, No. 14-36112 (KCF), 2017 WL 436257, at *1 (D.N.J. Feb. 1, 2017),

while obviously not binding precedent, is persuasive not only because it is so factually similar, but also because it thoroughly analyzed and, in my view, correctly ruled on both of the issues presented here: 1) whether a debtor is entitled to postpetition appreciation to fully fund a homestead exemption, and 2) whether a debtor has the right to amend her exemption claim by increasing it to take advantage of that appreciation. In *Morgan*, the debtor listed her homestead value at $125,000 and claimed a $5,601 exemption, the amount of equity remaining after subtracting a mortgage lien of $106,898 and estimated sales costs. Later, the trustee contended that the value of the property was $165,000. In response, the debtor filed an amended exemption claiming the maximum of $23,916 and adding another exemption under section 522(d)(5). The trustee objected to this amendment, arguing that the debtor may not amend her exemption to take advantage of the greater homestead value. In response, "[t]he [d]ebtor explained that, 'because the Trustee believes my home is worth more than $125,000.00, I amended my schedule to claim the maximum available of $23,916.00.'" *Id.* at 2. The debtor relied on *Law v. Siegel*, 134 S. Ct. 1188 (2014), to support her assertion that "she was able to amend her exemption at any time . . . ." *Id.* The bankruptcy court ruled in favor of the debtor, and the district court affirmed—finding no error in allowing the debtor to amend her exemption to claim and obtain the full exemption amount. *Id.* at *5.

### III. Exemption Amount is Not Determined at Filing

While *Gebhart* plays a significant role in the resolution of this case, the majority's reliance on *Gebhart* to contend that exemption *amounts* are irrevocably fixed on the date of filing

is unjustified. To begin, and what is most important to understand *Gebhart*, is that in *Gebhart* this court affirmed the BAP in *Klein v. Chappell* and the district court in *Gebhart v. Gaughan*, both of which permitted each debtor to, postpetition, assert an amended maximum homestead exemption claim in an amount greater than the amount claimed in the initial schedules, which greater amount resulted from postpetition appreciation—precisely what Wilson seeks to do. *See In re Gebhart*, 621 F.3d at 1212.

The majority's contention that exemption amounts are irrevocably fixed on the filing date stems from this partial, out-of-context statement: "what is frozen as of the date of filing the petition is the value of the debtor's exemption, not the fair market value of the property claimed as exempt." *Id.* at 1211. However, the full statement, in context, reveals a different meaning:

> Under *Reilly*, an exemption claimed under a dollar-value exemption statute is limited to the value claimed at filing. **At least when the total fair market value of the property is in fact greater than the exemption limit at the time of filing,** *see* note 4, *supra*, any additional value in the property remains the property of the estate, regardless of whether the extra value was present at the time of filing or whether the property increased in value after filing.
>
> The debtors argue that this conclusion is inconsistent with the Bankruptcy Code's scheme for valuing exempt property. Under 11 U.S.C. § 522(a)(2), "'value' [of property

> sought to be exempt] means fair market value
> as of the date of the filing of the petition or,
> with respect to property that becomes property
> of the estate after such date, as of the date
> such property becomes property of the estate."
> The debtors argue that this provision
> effectively freezes the value of property
> claimed as exempt as of the date of
> bankruptcy filing. This argument does not
> accord, however, with past holdings of this
> court, which establish that what is frozen as of
> the date of filing the petition is the value of
> the debtor's exemption, not the fair market
> value of the property claimed as exempt. *See
> Hyman v. Plotkin (In re Hyman)*, 967 F.2d
> 1316, 1320 n. 9 (9th Cir. 1992).

*Id.* (alteration and emphasis added).

The majority interprets the final partial sentence to support its conclusion that, under Washington's exemption scheme, a debtor's homestead exemption cannot exceed the amount that a debtor claimed on the filing date, based on the property's then-existing equity, even if the homestead appreciates in value. But the majority's posited interpretation cannot be correct for a number of reasons. First and most obvious, that interpretation stands in sharp contrast to, and is irreconcilable with, what the *Gebhart* court actually did. Rather than freeze the debtors' exemption amount to the properties' equity claimed upon filing, the court permitted the debtors to postpetition increase their exemption claims up to the statutory capped amounts and to use a portion of the properties' postpetition appreciation to fund those amounts. The majority's interpretation is also irreconcilable with

*Alsberg*, precedent upon which the *Gebhart* court relied in determining how postpetition appreciation is treated. *Id*.

Tellingly, the majority's interpretation of that partial statement ignores the court's full discussion indicating, in conformance with precedent, that when a homestead appreciates postpetition, the appreciation inures to the estate, but "a portion is otherwise exempt." *Id*. For example, the discussion preceding that partial statement informs as to its true meaning. There, the court observes that a dollar value exemption is limited to the exemption that debtor claimed at filing, but only "when the total fair market value of the property is in fact greater than the exemption limit at the time of filing . . . any additional value in the property remains the property of the estate regardless of whether the extra value was present at the time of filing." *Id.* In other words, when a debtor claims the maximum allowed exemption and at filing there is sufficient value to cover that amount, the debtor's exemption is frozen and he is not entitled to any of the property's appreciation. Conversely, it follows that if at filing there is insufficient value to meet the maximum exemption, the debtor is entitled to a portion of any appreciation up to the maximum exemption. This interpretation not only takes into account the *Gebhart* court's full discussion and what it actually did, but is also the only interpretation consistent with *Alsberg* and the other precedent which the *Gebhart* court cited with approval.

Moreover, the statement that exemptions are frozen on the filing date must be analyzed in the factual context in which it was made. Thus, it is important to note that the determinative issues in Wilson's case are different than those in *Gebhart*, keeping in mind that the court was discussing and ultimately rejecting the debtors' contention that section 522(a)(2)

"freezes the value of **property** claimed as exempt as of the date of the bankruptcy filing" so that the **estate** was not entitled to any postpetition appreciation. *Id.* (emphasis added). In both of *Gebhart's* two consolidated cases, the debtors contended that the trustees had effectively abandoned the homestead properties because the trustees did not object to debtors' homestead exemption claims which claimed all of the properties' purported equities at filing, which amounts were less than the maximum allowed homestead exemptions. Thereafter, the debtors claimed the appreciated properties themselves, the values of which had substantially increased to amounts greater than the statutory exemption cap. The ultimate issue in *Gebhart* was whether the trustees were entitled to the postpetition appreciation which exceeded the statutory cap such that they could sell the homestead properties or whether, instead, the debtors were entitled to all of the appreciation such that the trustees would have no interest in the homestead properties. In that different context, *Gebhart* held in both cases that the trustee did not have to object to the debtor's schedules which represented no value in the homestead property above the exemption claim, that the property was still estate property, and "the estate [was] entitled to postpetition appreciation in the value of property a portion of which [was] otherwise exempt." *Id.* at 1211 (citing *In re Alsberg*, 86 F.3d at 314–15). The court must read the full context of *Gebhart* together with pre-existing precedent and what the *Gebhart* court actually did in order to fully understand what the *Gebhart* court meant by the isolated statement, "what is frozen as of the date of filing the petition is the value of the debtor's exemption." *In re Gebhart*, 621 F.3d at 1211.

It is also noteworthy that the *Gebhart* court credits its statement to *Hyman*, where husband and wife debtors claimed

the maximum statutory exemption amount when initially asserting their homestead exemption and then postpetition claimed the appreciated property itself. *In re Hyman*, 967 F.2d at 1318. The court found for the trustee, holding that the debtors' interest was limited to their monetary interest permitted by the homestead exemption. *Id.* at 1321. Because the *Hyman* debtors had already claimed the maximum $45,000 homestead exemption, debtors were not entitled to exempt any more. *Id.* at 1318. That is, debtors' exemption was frozen at the statutory cap upon filing. As the court explained:

> The Hymans only claimed a $45,000 homestead exemption. See page 1318 *supra*. That figure is fixed "as of the date of the filing the petition." 11 U.S.C. § 522(a)(2). However, nothing in section 522, or anywhere else in the Bankruptcy Code for that matter, requires that *non-exempt assets* have their values frozen on the petition date.

*Id.* at 1320 n.9 (emphasis added). It is this language from *Hyman* to which *Gebhart* refers. The full context in which it was made clearly does not support the majority's view that Wilson may not benefit from postpetition appreciation in order to obtain her full exemption. To the contrary, context explains how the "fixed at filing" language is fully compatible with Wilson's position here. The estate is entitled to the homestead's appreciation that is not otherwise exempt, in line with this court's precedent, including *Alsberg* and *Gebhart*.

It is also significant that Washington's homestead exemption law, consistent with Ninth Circuit precedent,

provides that the relevant time to determine and disburse a debtor's homestead exemption amount is when the property is sold. *Sweet v. O'Leary*, 88 Wash. App. 199, 200 (1997) ("The homestead exemption creates an interest in property that attaches to the surplus proceeds from a nonjudicial foreclosure sale under a deed of trust such that a judgment creditor's claim is limited to funds in excess of the homestead, if any."). Washington's homestead exemption is capped at the lesser of "the total *net value* of the lands . . . or (2) the sum of one hundred twenty-five thousand dollars . . ." Wash. Rev. Code § 6.13.030 (emphasis added). Washington defines "net value" as "market value less all liens and encumbrances senior to the judgment being executed upon and not including the judgment being executed upon." Wash. Rev. Code § 6.13.010. Thus, Washington contemplates that the value of its homestead exemption is determined upon execution of a judgment against homestead property, or in the bankruptcy context upon trustee's sale, and is limited to the lesser of the net proceeds from the sale or $125,000. *Id.*; Wash. Rev. Code § 6.13.030. According to Washington law, then, the proper value of the exemption amount is determined at sale, not at filing. [7] Washington's approach is wholly consistent with this court's adoption of the general principle that exemption amounts are determined at sale rather than at filing. *In re Hyman*, 967 F.2d at 1318 (explaining that under California's homestead exemption scheme, "[i]f the sale price

---

[7] Washington's homestead exemption law exempts, upon sale, a maximum of $125,000 in homestead equity from judgment creditors' reach, and per *Hyman*, the same treatment applies in the bankruptcy context. *In re Hyman*, 967 F.2d at 1319 (concluding that pursuant to section 522(b)(3)(a)'s deference to state law homestead exemptions, bankruptcy petitioners under federal law are treated as judgment debtors and are entitled to exempt any "property qualifying under California's homestead exemption statute.").

does exceed [the total of the homestead exemption and encumbrances on the property] the homestead may be sold and the judgment debtor is entitled to a sum equal to his homestead exemption from the proceeds of the sale.") (alteration added). Thus,

> In the normal situation where section 704.800 is called into play—a sale of property to satisfy a judgment lien—the concept of an interest that fluctuates in value makes no sense because all the relevant events occur on the date of sale. Only in the bankruptcy context, where an appreciable period of time usually passes between filing of the petition and sale of the property, can the property rise or fall in value. Yet, we see no basis for treating a sale by a trustee in bankruptcy any different from a sale by a judgment lienholder. The debtor's right to use the exemption comes into play not upon the filing of the petition, but only if and when the trustee attempts to sell the property.

*Id.* at 1321. Consistent with *Hyman*, the *Alsberg* court held:

> Alsberg's California homestead exemption can be realized only from the net proceeds of sale received by the estate. The estate held an interest in the residence at all times after the petition was filed. Therefore, when the residence was sold, the proceeds of the sale vested in the estate. When Alsberg subsequently filed a claim for a $45,000 homestead exemption after the sale of the

property, he became entitled to $45,000 of the
proceeds, and no more.

*In re Alsberg*, 68 F.3d at 315; *see also In re Bruton*, 167 B.R.
at 926.

In view of all this, the majority's overly literal
interpretation of that out-of-context statement from *Gebhart*
regarding freezing exemptions cannot be justified.

Further, here, unlike the *Gebhart* debtors, Wilson does
not contend that the value of her homestead property was
frozen upon filing or that she is entitled to all postpetition
appreciation. Rather, Wilson agrees that the property's value
has appreciated, and she seeks only the amount of her capped
homestead exemption, not her homestead property nor its
appreciated equity in excess of the exemption cap.

In the final analysis, section 522(b)(3)(A), which allows
debtors to use state exemption statutes, must be construed
liberally in favor of Wilson. *See Culver, LLC v. Chiu (In re
Chiu),* 266 B.R. 743, 747 (B.A.P. 9th Cir. 2001), *aff'd*,
304 F.3d 905 (9th Cir. 2002) ("It is well-established that
§ 522 is to be interpreted liberally in favor of debtors in order
to facilitate their 'fresh start.'"). A liberal construction of
section 522(b)(3)(A) and Washington's homestead exemption
statute requires that Wilson's exemption amount be fixed at
sale, not at filing.

## IV.    Postpetition Appreciation Inures to the Estate

The majority also relies on the rather unremarkable
principle that postpetition appreciation in estate property
inures to the estate as support for not allowing Wilson to

amend her exemption schedule to claim a portion of that appreciation. Certainly, the principle that postpetition appreciation inures to the estate is well-established. *See Schwaber v. Reed (In re Reed)*, 940 F.2d 1317, 1323 (1991) ("We interpret [§ 541(a)(6)] to mean that appreciation inures to the bankruptcy estate, not the debtor."); *In re Alsberg*, 68 F.3d at 314–15; *In re Viet Vu*, 245 B.R. 644, 648 (B.A.P. 9th Cir. 2000) ("[T]he estate is entitled to postpetition appreciation"). In fact, a trustee's ability to sell appreciated homestead property stems from the concept that postpetition appreciation initially inures to the estate. *See In re Gebhart*, 621 F.3d at 1210. However, the majority draws a faulty conclusion from this limited principle.

The majority is correct that section 541(a)(1) defines one category of estate property to include, "all legal or equitable interests of the debtor in property as of the commencement of the case." However, the majority treats the estate's postpetition category of property defined in section 541(a)(6) differently by classifying it as property that may never be exempted from the bankruptcy estate, notwithstanding that section 541(a)(6) is part of the list of all properties which section 541(a) includes as "property of the estate." Section 541(a) states: "The commencement of a case under . . . this title creates an estate. Such estate is comprised of all of the following property, wherever located and by whomever held." Section 541(a)(6), the sixth category of that estate property, includes: "proceeds, product, offspring, rents, or profits of or from property of the estate . . ." The majority acknowledges that "proceeds, product, offspring, rents, or

profits," which without question includes appreciation,[8] are part of the bankruptcy estate, but curiously concludes that only the debtor's property that transfers to the estate at filing, rather than the debtor's property which transfers postpetition, is subject to exemptions under section 522.

The majority's position is not supported by statute or caselaw. To the contrary, as discussed above, prohibiting a debtor from exempting postpetition appreciation from the estate contravenes binding precedent.

To say that debtor's property, including its appreciation, vests in the estate, says nothing about the debtor's right to revestment of a portion of the net proceeds from the sale of that property pursuant to debtor's homestead exemption. This is because all of debtor's property, including appreciation, must initially inure to the estate before the proceeds from the sale of such property may ultimately be distributed to those claiming an interest in the estate property, e.g., creditors, and, of course, debtors, by virtue of exemption or abandonment. It is axiomatic that the only property subject to exemptions is that which becomes part of the estate, but no statute or caselaw limits a debtor's right to exempt only that property which entered the estate at the commencement of the bankruptcy proceeding. *See* 11 U.S.C. § 522(b)(1). Thus,

---

[8] *Gebhart* makes clear that postpetition appreciation becomes an estate asset pursuant to section 541(a)(6). *In re Gebhart*, 621 F.3d at 1211 ("[T]his court's past position on postpetition appreciation is based not solely on the California statute defining exempt property but also on 11 U.S.C. § 541(a)(6) (including as property of the estate '[p]roceeds, product, offspring, rents, or profits of or from property of the estate ...'), which is equally applicable to the [non-California] cases at issue here."). Thus, postpetition appreciation comes into the estate by virtue of section 541(a)(6).

"[t]he effect of an exemption is that the debtor's interest in the property is 'withdrawn from the estate (and hence from the creditors) for the benefit of the debtor.'" *In re Gebhart*, 621 F.3d at 1210 (quoting *Owen v. Owen*, 500 U.S. 305, 308 (1991)); *see also In re Morgan*, 2017 WL 436257 at *4 ("The *Orton* and *Gebhart* courts both held that postpetition appreciation was property of the estate and, therefore, may properly be exempted by a debtor."). Nothing in section 522 limits a debtor from exempting an interest in estate property acquired postpetition if an applicable exemption exists. *See* § 522.

It follows that because postpetition appreciation is an estate asset, it is then subject to the maximum applicable homestead exemption irrespective of the amount of the exemption initially claimed by debtor. *Gebhart,* in affirming both the lower courts, applies this principle, recognized by this court in *Alsberg*, when holding that: "the estate is entitled to postpetition appreciation in the value of property *a portion of which is otherwise exempt.*" *In re Gebhart*, 621 F.3d at 1211 (emphasis added).

Applying these concepts here, Wilson's homestead property, with its postpetition appreciation, is unquestionably property of the estate, $125,000 of which should be revested to her by virtue of her allowable homestead exemption.

Because estate property, including its appreciation, is subject to exemptions, even though Wilson had not initially claimed Washington's maximum exemption amount, she may now claim the full exemption nonetheless. Thus, permitting Wilson to amend her schedules to assert Washington's full homestead exemption is required by the Code's text and this court's binding precedent. Moreover, permitting Wilson to

assert her full exemption on estate property, including its postpetition appreciation, fairly promotes the bankruptcy fresh start policy.

## V.  The "Snapshot" Rule

In what has been labeled the "snapshot rule" through caselaw, section 522(b)(3)(A) states that "exemptions must be determined in accordance with the state law 'applicable on the date of filing.'" *In re Jacobson*, 676 F.3d 1193, 1199 (9th Cir. 2012) (quoting § 522(b)(3)(A) (exempting from property of the estate "any property that is exempt under . . . State or local law that is *applicable* on the date of the filing . . .") (emphasis added)). The majority contends that the "snapshot rule" directly supports its position that the claimed *amount* of the exemption, as opposed to only the right to assert a specific exemption claim, is indelibly fixed at filing. The majority's interpretation of the snapshot rule is an unjustified extension of that rule as applied by the caselaw on which the majority relies. Moreover, that interpretation runs counter to the three basic principles applicable to exemption statutes: 1) exemption statutes must be liberally interpreted in favor of debtors; 2) an exemption may not be denied in the absence of an explicit provision to do so; and 3) courts must permit debtors to amend their bankruptcy schedules as a matter of course.

While it is accurate that the court in *Jacobson* stated that "[u]nder the so-called snapshot rule, bankruptcy exemptions are fixed at the time of the bankruptcy petition," 676 F.3d at 1199, *Jacobson* and *White v. Stump*, 266 U.S. 310 (1924), the other case upon which the majority relies, do not support the majority's extension of the snapshot rule. This is because in those cases the courts did not discuss, much less decide,

whether the *amount* of the debtor's exemption is fixed at filing, but rather only whether the debtor qualified for a particular homestead exemption in effect at filing.

As made abundantly clear in discussing the snapshot rule, this court, relying on section 522(b)(3)(A)'s specific mandate, explained that state homestead exemptions "must be determined in accordance with the state law 'applicable on the date of filing'" and that courts must look to that law to determine "whether an exemption applies." *In re Jacobson*, 676 F.3d at 1199 (quoting § 522(b)(3)(A)). In *Jacobson*, the debtors did not qualify for the exemption because they did not reinvest the proceeds from the sale of their homestead property within six months, as required by California law. *Id*. Because the debtors failed to comply with state law as it existed on the date of filing, the court found that they forfeited the exemption. *Id.* As with *Jacobson*, the majority overstates the actual, limited holding in *White*. There, the Supreme Court simply held that a debtor could not assert a homestead exemption when the property did not qualify for exemption at the time of filing. *White*, 266 U.S. at 314. *White* did not mention, much less rule on, whether the amount of an exemption is fixed at filing or whether a debtor could postpetition increase the dollar amount of a homestead exemption claim based on appreciation. *Id*.

Neither of the majority's cases speaks to the issues presented here. Tellingly, the majority cites no case, and I have found none, which has extended the snapshot rule to freeze the amount of an exemption at filing. And in my view, any such extension would be inconsistent with a liberal interpretation of section 522(b)(3)(A) in favor of the debtor. More to the point, the extension of the snapshot rule as posited by the majority—that the amount of debtor's

exemption claim at filing may not be amended to reflect postpetition appreciation—ignores this court's precedent to the contrary.

This court has explained that in applying a state homestead exemption statute, courts should look to "clearly defined rights with respect to" the statute. *Id.* With respect to Washington's exemption statute, it does not, nor does the Code for that matter, provide that a homestead exemption is limited to the amount claimed at filing or set a deadline for asserting the full exemption. To the contrary, as discussed above, Washington's homestead exemption is determined by and is applied to the "surplus proceeds from a . . . sale . . . such that a judgment creditor's claim is limited to funds in excess of the homestead, if any." *Sweet*, 88 Wash. App. at 200. The snapshot rule, as properly construed, is not relevant here because at the time Wilson filed her petition, the exemption for which she qualified read the same as it does today: "the homestead is exempt from attachment and from execution or forced sale for the debts of the owner up to the amount specified in RCW 6.13.030." Wash. Rev. Code § 6.13.070. Moreover, nothing in Washington's homestead exemption statute tethers the homestead exemption amount to the bankruptcy filing date. *See* Wash. Rev. Code § 6.13.030. Consequently, the majority's position that Wilson's homestead exemption was limited to $3,560 because exemption *amounts* are fixed at filing is flawed.

## VI.    Guiding Bankruptcy Principles

As indicated above, there are three undisputed fundamental principles which must guide the court's analysis here, none of which have been discussed, much less taken into account, by the majority or the courts below.

First, the overarching and well-established purpose of the bankruptcy scheme is to "grant a fresh start to the honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (internal quotations omitted). To that end, exemptions play a critical role. "[E]xemptions in bankruptcy cases are part and parcel of the fundamental bankruptcy concept of a 'fresh start.'" *Schwab*, 560 U.S. at 791 (citations omitted). This court dutifully recognizes the significance of exemptions and, consequently, adheres to a strong policy of interpreting exemptions "liberally in favor of debtors." *See In re Chiu,* 266 B.R. at 747 ("It is well-established that § 522 is to be interpreted liberally in favor of debtors in order to facilitate their 'fresh start.'"); *see also In re Arrol,* 170 F.3d 934, 937 (9th Cir. 1999) ("[W]e are mindful of the strong policy underlying both California law and federal bankruptcy law to interpret exemption statutes liberally in favor of the debtor.") (alteration added).

An analysis of the permissibility of Wilson's proposed postpetition amendment must be guided by the well-established fresh start and liberal-construction-of-exemptions mandates. How better to assist an honest but unfortunate debtor's fresh start than to permit her to claim the maximum applicable statutory homestead exemption amount? It is noteworthy that Wilson, unlike the debtors in *Hyman*, *Alsberg*, *Klein v. Chappell*, and *Gebhart v. Gaughan*, seeks to obtain no more than the full exemption amount which the homestead exemption statute permitted when she filed.

Second, bankruptcy courts may not deny a debtor's exemption on a ground not specified in the Code. *Law*, 134 S. Ct. at 1197. In *Law*, the Supreme Court, in finding that the bankruptcy court lacked authority to sanction a debtor by surcharging, and thus reducing, his homestead exemption

amount after the debtor committed overt fraud on the bankruptcy court, explained that: "A debtor need not invoke an exemption to which the statute entitles him; but if he does, the court may not refuse to honor the exemption absent a valid statutory basis for doing so." *Id.* at 1196. As discussed elsewhere, there is no valid statutory basis for not honoring Wilson's right to her full exemption.

Third, Federal Rule of Bankruptcy Procedure 1009 grants debtors the right to freely amend their bankruptcy petitions, including their exemption schedules. The rule states: "A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed." Fed. R. Bankr. P. 1009. "This right to amend includes the right to amend the debtor's list of property claimed exempt." *In re Goswami*, 304 B.R. 386, 393 (B.A.P. 9th Cir. 2003) ("The approach we adopt in this case is consistent with the Ninth Circuit's policy of liberally allowing debtors to amend their exemption schedules so as to enhance their fresh start.") (citing *In re Michael*, 163 F.3d at 529). "The bankruptcy court has no discretion to disallow amended exemptions, unless the amendment has been made in bad faith or prejudices third parties." *In re Arnold*, 252 B.R. 778, 784 (B.A.P. 9th Cir. 2000). As the Supreme Court noted, "[T]o disallow an exemption [] or to bar a debtor from amending his schedules to claim an exemption . . . is much the same thing . . ." *Law*, 134 S. Ct. at 1196. Importantly, in *Michael*, this court expressly held that, pursuant to a debtor's right to freely amend under Bankruptcy Rule 1009(a), a debtor may amend her bankruptcy schedules to claim a homestead exemption for the first time postpetition. *In re Michael,* 163 F.3d at 528 (permitting debtors to amend bankruptcy schedules to claim homestead exemption more than one year after the date of filing).

The denial of Wilson's right to amend her exemption claim in order to obtain Washington's maximum homestead exemption to which she is entitled is an impermissible denial of a substantial portion of Wilson's homestead exemption. Nothing in the Code limits the amount of a debtor's state law homestead exemption to the amount of equity claimed in the property on the filing date. Moreover, denying Wilson's right to amend is inconsistent with *Michael* and Bankruptcy Rule 1009(a). In contrast to the majority's position that a debtor's exemption amount is always limited to the amount claimed at filing, this court in *Michael* was intent on "implement[ing] the policy of liberally allowing the debtors to amend their exemption claims in order to enhance their fresh start." *In re Michael*, 163 F.3d at 529. It is counterintuitive and an illiberal interpretation of the exemption laws to hold that a debtor may amend her bankruptcy schedules to claim a homestead exemption for the first time postpetition, as permitted in *Michael*, but to deny a debtor the right to amend her bankruptcy schedules to postpetition increase her homestead exemption claim. Both scenarios allow a postpetition amendment and a greater exemption for the debtor.

In an attempt to justify denying Wilson's full exemption, the majority relies on section 522(a)(2)'s term-of-art definition of "value" to support fixing the exemption amount to the equity amount claimed on the filing date. Such reliance is ill advised for a number of reasons, not the least of which is the section's clear language. While section 522(a)(2) provides that "**in this section**, 'value' means fair market value as of the date of the filing of the petition," the word "value" is noticeably absent from, and thus inapplicable to, section 522(b)(3)(A), which authorizes debtors to utilize state law exemptions rather than federal exemptions. § 522(a)(2)

(emphasis added). In contrast, section 522 includes the word "value" in several other irrelevant federal exemption sections, such as within section 522(d)(2), which federally exempts a "debtor's interest, not to exceed $3,775 in *value*, in one motor vehicle." § 522(d)(2). That the defined term "value" is present in some sections but not section 522(b)(3)(A), the only section relevant here, clearly indicates that the defined term "value" plays no role in Wilson's homestead exemption analysis. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."). In fact, the only limitation in the Code on a debtor's right to exempt property under *state* law is that the exemption statute must be "applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located" for a period of time prior to filing. § 522(b)(3)(A). Moreover, nothing in section 522 limits exemptions to property that entered the estate on the filing date, as opposed to property that entered the estate postpetition. *See gen.* § 522. Thus, nothing in section 522, or anywhere else in the Code, limits Wilson's right to amend her schedules to claim and receive her full homestead exemption amount, which may include some postpetition appreciation.

For all of these reasons, I would reverse to allow Wilson to amend her homestead exemption claim in order for her to obtain the full exemption to which she is entitled.