# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In the Matter of: NIKALOUS G.
GEBHART,

*Debtor,*

_____

NIKALOUS G. GEBHART,

*Appellant,*

v.

MAUREEN GAUGHAN,

*Trustee-Appellee.*

No. 07-16769

D.C. No.
CV-07-0193 ROS

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, District Judge, Presiding

In the Matter of: STEVEN JAY
CHAPPELL; JULIE LYNN CHAPPELL,

*Debtors,*

_____

STEVEN JAY CHAPPELL; JULIE LYNN
CHAPPELL,

*Appellants,*

v.

MICHAEL P. KLEIN, Chapter 7
Trustee,

*Appellee.*

No. 07-35704

BAP No.
WW 06-1435
RKMo

OPINION

14063

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Riblet, Klein, and Montali, Bankruptcy Judges, Presiding

Argued and Submitted December 12, 2008
San Francisco, California
Submission Vacated August 27, 2009
Resubmitted July 30, 2010

Filed September 14, 2010

Before: A. Wallace Tashima and Marsha S. Berzon, Circuit
Judges, and Robert J. Timlin,* District Judge.

Opinion by Judge Tashima

---

*The Honorable Robert J. Timlin, United States District Judge for the
Central District of California, sitting by designation.

## COUNSEL

Harold E. Campbell, Mesa, Arizona, for appellant Gebhart.

Steven J. Brown, Phoenix, Arizona, for appellee Gaughan.

Marc S. Stern, Seattle, Washington, for appellants Chappells.

James W. Shafer, Seattle, Washington, for appellee Klein.

Tara Twomey, San Jose, California, for *amicus curiae* National Association of Consumer Bankruptcy Attorneys.

## OPINION

TASHIMA, Circuit Judge:

These consolidated appeals present the question of how to construe the homestead exemption in bankruptcy. In both cases, the debtors filed for Chapter 7 bankruptcy at a time when the value of the equity in their homes was less than the amount they were eligible to claim under the state or federal homestead exemption. There was no value in the homestead properties that could be claimed by the bankruptcy estate, and the debtors therefore anticipated that they would be able to retain ownership of their homes, subject to the terms of their mortgages, after the bankruptcy closed. The value of the homes subsequently increased so that the debtors had equity in excess of the homestead exemptions. Our question is whether the bankruptcy Trustees may force a sale of the homestead properties in order to recover the excess equity, or whether instead the debtors should be allowed to retain any postpetition increase in the fair market value of their homes.

We have jurisdiction over these appeals pursuant to 28 U.S.C. §§ 158(d)(1), 1291.

### BACKGROUND

*The Gebhart Bankruptcy*

On August 8, 2003, Nikalous Gebhart ("Gebhart"), a resident of Arizona, filed for Chapter 7 bankruptcy protection. As part of his bankruptcy petition, he claimed an exemption in the amount of $89,703 for the house he owned in Phoenix. According to the petition, the market value of the property at the time of filing was $210,000, and it was encumbered by mortgages in the amount of $120,297. The $89,703 figure represents the difference between the value of the homestead and the mortgages with which it was encumbered. Gebhart claimed the exemption pursuant to ARIZ. REV. STAT. § 33-

1101(A), which at the time of the bankruptcy filing provided that an Arizona resident "may hold as a homestead exempt from attachment, execution and forced sale, not exceeding one hundred thousand dollars in value . . . [t]he person's interest in real property in one compact body upon which exists a dwelling house in which the person resides."[1] The Trustee did not object to Gebhart's claim of a homestead exemption in the property.

Gebhart received his discharge under 11 U.S.C. § 727 on December 12, 2003. He continued to reside in his house and even refinanced his mortgage with a lender who apparently believed Gebhart owned the property free and clear of any claims by the bankruptcy estate. In fact, however, the bankruptcy case was not closed. On November 10, 2006, the Trustee asked the bankruptcy court to approve the appointment of a real estate broker to sell the home for the benefit of the estate.[2] The Trustee believed that the value of the house had increased substantially since the time of the bankruptcy filing, and that if it were sold, the estate would recover a great deal of money, even after paying off the mortgage and the expenses of the sale and paying Gebhart the value he had claimed for his homestead exemption. Gebhart responded by moving that the court order the Trustee to abandon the homestead as valueless to the estate, or, in the alternative, that the court determine that the estate no longer had any interest in the homestead. Gebhart argued that the value of the homestead for the purposes of the bankruptcy case had been locked

---

[1]The statute has since been amended to increase the amount of the exemption to $150,000. The exemption statute, as is common in these statutes, does not protect against foreclosure by holders of consensual liens such as mortgages. *Id.* § 33-1104(D). Arizona has opted out of the federal system of exemptions pursuant to 11 U.S.C. § 522(b)(2), and thus Gebhart was eligible to use only the state law system of exemptions.

[2]Gebhart states in his brief that the Trustee demanded in October 2006, prior to applying for the appointment of a real estate broker, that Gebhart pay the Trustee $115,000 for increased equity in the house. There is no indication in the record of any such demand.

in at the time of the bankruptcy filing, and that because the entire value at that time had been covered by mortgages and the homestead exemption, there was no value left for the estate to recover.

The bankruptcy court ruled in favor of the Trustee, ordering the appointment of a real estate broker and denying the motion for abandonment. Gebhart appealed to the district court, which affirmed the bankruptcy court's ruling. This appeal followed.

*The Chappell Bankruptcy*

The Chappells' story is similar to that of Gebhart. Steven and Julie Chappell filed for Chapter 7 bankruptcy on June 30, 2004. They owned a home in Camano Island, WA, in which their equity at the time of bankruptcy—$21,511—was less than the $36,900 they were allowed to claim under the federal homestead exemption in bankruptcy, 11 U.S.C. § 522(d)(1).[3]

The Chappells received their discharge under 11 U.S.C. § 727 on October 21, 2004. On July 7, 2006, two years after the bankruptcy petition was filed, the holder of the Chappells' mortgage moved for relief from the stay in order to foreclose on the homestead because the Chappells had fallen into default. The Trustee responded that he believed the fair market value of the homestead had increased substantially since the bankruptcy filing, and asked permission to attempt to sell the property and keep the excess recovered for the benefit of the estate. The bankruptcy court ruled that the homestead had passed entirely out of the estate when the Chappells had claimed all of their equity in it as exempt and the Trustee failed to object. The Trustee appealed and the bankruptcy

---

[3]At the time the case was filed, the federal homestead exemption was $18,450. Because the Chappells filed a joint bankruptcy case, they were allowed to double the value of the exemption pursuant to 11 U.S.C. § 522(m).

appellate panel (the "BAP") reversed the bankruptcy court's decision, holding that the postpetition appreciation in the homestead belonged to the estate. *Klein v. Chappell (In re Chappell)*, 373 B.R. 73, 83 (9th Cir. BAP 2007). This appeal followed.

## STANDARD OF REVIEW

When we review a district court's affirmance of a bankruptcy court's decision, we apply the same standard as the district court: the bankruptcy court's findings of fact are reviewed for clear error, and conclusions of law are reviewed de novo. *Abele v. Modern Fin. Plans Servs., Inc. (In re Cohen)*, 300 F.3d 1097, 1101 (9th Cir. 2002). The same is true of an appeal from the BAP's reversal of a bankruptcy court's decision. *Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775, 783 (9th Cir. 2007).

## ANALYSIS

**[1]** The primary issue we must decide in these consolidated appeals is whether the Trustee's failure to object to the homestead exemption claim within the period allowed by statute resulted in the homestead property being withdrawn from the bankruptcy estate at that point. The Supreme Court held in *Taylor v. Freeland & Kronz*, 503 U.S. 638, 644 (1992), that, unless the trustee objects to a claimed exemption within the 30-day period allowed under Federal Rule of Bankruptcy Procedure 4003(b), the property is exempted from the bankruptcy estate even if the debtor had no good faith basis for the claim of exemption. The effect of an exemption is that the debtor's interest in the property is "withdrawn from the estate (and hence from the creditors) for the benefit of the debtor." *Owen v. Owen*, 500 U.S. 305, 308 (1991); *accord Smith v. Kennedy (In re Smith)*, 235 F.3d 472, 478 (9th Cir. 2000) ("It is widely accepted that property deemed exempt from a debtor's bankruptcy estate revests in the debtor."). As the Second Circuit has stated, "[q]uite simply, property that has been exempted

belongs to the debtor." *Bell v. Bell (In re Bell)*, 225 F.3d 203, 216 (2d Cir. 2000). This principle is consistent with the text of the Bankruptcy Code, which defines exempt property as property that, unlike all the debtor's other property, does not belong to the bankruptcy estate. *See* 11 U.S.C. § 522(b)(1); *see also* S. REP. No. 95-989, at 52 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5838 (recognizing that exempt property "ceases to be property of the estate").

**[2]** The homestead exemptions available to the debtors in both of these cases, however, do not permit the exemption of entire properties, but rather specific dollar amounts. Under 11 U.S.C. § 522(d)(1), the Chappells were entitled to exempt "[t]he debtor's aggregate interest, not to exceed [$36,900] in value, in real property." Similarly, the Arizona statute under which Gebhart claimed his exemption entitles a debtor to a homestead exemption "not exceeding one hundred thousand dollars in value."ARIZ. REV. STAT. § 33-1101. The Supreme Court recently clarified in *Schwab v. Reilly (In re Reilly)*, 130 S. Ct. 2652 (2010), that exemptions claimed under statutes like these are limited to the dollar value claimed in the exemption. Even when a debtor claims an exemption in an amount that is equal to the full value of the property as stated in the petition and the trustee fails to object, the asset itself remains in the estate, at least if its value at the time of filing is in fact higher than the exemption amount.[4] *Id.* at 2661-62, 2666. Instead, what is removed from the estate is an "interest"

---

[4]We note that *Reilly* did not address instances in which the full value of property at the time of filing is in fact equal to or less than the monetary limit provided for by the relevant bankruptcy exemption. Although the Court expressed skepticism about the issue, it left open whether such a claim would entitle a debtor to the property itself as opposed to a payment equal to the property's full value. *Reilly*, 130 S. Ct. at 2668 n.21. As in *Reilly*, the facts of these cases do not implicate this scenario, because the debtors here claimed as exempt only their equity interest in their properties (the difference between the value of the homesteads and the mortgages with which they were encumbered), not the full fair market value of their properties.

in the property equal to the value of the exemption claimed at filing. *Id.* at 2660.[5] The implications for the cases at issue here are clear: the fact that the value of the claimed exemption plus the amount of the encumbrances on the debtor's residence was, in each case, equal to the market value of the residence at the time of filing the petition did *not* remove the entire asset from the estate.

The Supreme Court's decision in *Reilly* was based on a somewhat different situation than is present here. In *Reilly*, the debtor underestimated the value of the exempt property at the time of filing. *Id.* at 2657-58. In both of the current cases, by contrast, the debtors accurately valued the equity interests in their homestead properties at the time of bankruptcy filing, but the fair market values of the properties increased subsequent to filing. This distinction, however, does not alter the analysis. Under *Reilly*, an exemption claimed under a dollar-value exemption statute is limited to the value claimed at filing. At least when the total fair market value of the property is in fact greater than the exemption limit at the time of filing, *see* note 4, *supra*, any additional value in the property remains the property of the estate, regardless of whether the extra value was present at the time of filing or whether the property increased in value after filing.

[3] The debtors argue that this conclusion is inconsistent

---

[5]Gebhart relies on *Evans v. Young*, 661 P.2d 1148 (Ariz. Ct. App. 1983), to argue that the Arizona homestead exemption statute exempts an entire property and not merely a dollar amount equal to the maximum amount of the exemption, and that because Arizona is an opt-out state the Supreme Court's contrary interpretation of the federal exemption scheme is irrelevant. *Evans*, however, was decided based on an earlier version of the Arizona homestead statute, which exempted "real property", *Evans*, 661 P.2d at 1149 n.1, whereas the current version of the statute exempts an "*interest in* real property,"ARIZ. REV. STAT. § 33-1101(A) (emphasis added). By its plain language, the Arizona homestead exemption thus appears to track the federal exemption in applying only to an interest up to a given monetary amount.

with the Bankruptcy Code's scheme for valuing exempt property. Under 11 U.S.C. § 522(a)(2), " 'value' [of property sought to be exempt] means fair market value as of the date of the filing of the petition or, with respect to property that becomes property of the estate after such date, as of the date such property becomes property of the estate." The debtors argue that this provision effectively freezes the value of property claimed as exempt as of the date of bankruptcy filing. This argument does not accord, however, with past holdings of this court, which establish that what is frozen as of the date of filing the petition is the value of the debtor's exemption, not the fair market value of the property claimed as exempt. *See Hyman v. Plotkin (In re Hyman)*, 967 F. 2d 1316, 1320 n.9 (9th Cir. 1992). A number of our cases have held that, under the California exemption scheme, the estate is entitled to postpetition appreciation in the value of property a portion of which is otherwise exempt. *See Alsberg v. Robertson (In re Alsberg)*, 68 F.3d 312, 314-15 (9th Cir. 1995); *Hyman*, 967 F.2d at 1321; *Schwaber v. Reed (In re Reed)*, 940 F.2d 1317, 1323 (9th Cir. 1991); *see also Viet Vu v. Kendall (In re Viet Vu)*, 245 B.R. 644, 647-48 (9th Cir. BAP 2000).

The fact that the cases cited above dealt with exemptions claimed under California's statutory exemption scheme does not limit their applicability to the cases at bench, where exemptions were claimed under Arizona and federal statutes. *Reilly* has reaffirmed certain of the underlying principles in these cases and clarified that, with respect to how exempt property is defined, their reasoning is applicable not just to California's exemption scheme, but to all statutes that limit the value of an exemption to an "interest" in property capped at a dollar value. Morever, this court's past position on postpetition appreciation is based not solely on the California statute defining exempt property but also on 11 U.S.C. § 541(a)(6) (including as property of the estate "[p]roceeds, product, offspring, rents, or profits of or from property of the estate . . ."), which is equally applicable to the cases at issue

here. *See In re Reed*, 940 F.2d at 1323; *In re Viet Vu*, 245 B.R. at 649.

**[4]** The debtors argue that the result we reach today will lead to uncertainty about the status of exempt property and abuses by trustees. The facts of the Gebhart bankruptcy suggest that some of these concerns are legitimate. Gebhart remained in his home for five years after filing for bankruptcy, paying his mortgage and believing that his bankruptcy was finished when he received his discharge. Gebhart may have been mistaken in this belief, but his misapprehension was shared by his mortgage lender, which refinanced his home, apparently unaware of any claims on the property by the Trustee. A Chapter 7 debtor will not be certain about the status of a homestead property until the case is closed (something that may not happen for several years after bankruptcy filing) or the trustee abandons the property.

Gebhart argues that, even if the homestead is the property of the bankruptcy estate, the Trustee in his case intentionally left the case open longer than necessary and should be estopped from proceeding with the sale of the property. We do not decide whether estoppel might be available as a remedy in a bankruptcy proceeding, *see Cannon v. Hawaii Corp. (In re Hawaii Corp.)*, 796 F.2d 1139, 1144 n.3 (9th Cir. 1986), because, even if it were, Gebhart has not met the requirement for estoppel to apply. The following four elements are required in order for estoppel to apply:

> (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

*Bob's Big Boy Family Rests. v. NLRB*, 625 F.2d 850, 854 (9th Cir. 1980). Gebhart has made no showing that the Trustee

intended for Gebhart to act as if he would be able to retain the homestead property permanently. Nor can Gebhart show, as required by the second part of the second element, that he had a right to believe that the Trustee, by her inaction, intended Gebhart to believe that she had released all rights to the homestead. The estate does not relinquish property until the bankruptcy case is closed or the estate abandons the property under 11 U.S.C. § 554. Moreover, Gebhart was no more ignorant of the true facts than was the Trustee.

Furthermore, abandonment of an estate asset is not a remedy for a trustee's misconduct. A trustee has a duty under 11 U.S.C. § 704(a)(1) to administer the case quickly and expeditiously, and we reach no decision as to whether the Trustee failed to live up to this duty by leaving the case open for eighteen months without activity. If there were any misconduct by the Trustee, the duty to police it falls on the U.S. Trustee in Gebhart's district, who may suspend or expel a trustee for failure to perform her duties or comply with the Bankruptcy Code. *See* 28 C.F.R. § 58.6(a)(2) - (3). To require the Trustee to abandon Gebhart's homestead would punish Gebhart's creditors for the Trustee's misdeeds.[6]

## CONCLUSION

For the reasons set forth above, the judgment of the district court in Gebhart's case, No. 07-16769, and of the BAP in the Chappells' case, No. 07-35704, are **AFFIRMED.**

---

[6]A debtor also has an alternative remedy of petitioning under 11 U.S.C. § 554(b) for the bankruptcy court to "order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."