FILED

NOV 2 2022

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT



**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>MONTE L. MASINGALE (Deceased) and<br>ROSANA D. MASINGALE,<br>　　　　　　Debtors. | BAP No. EW-22-1016-FLB<br><br>Bk. No. 15-03276-FPC11 |
| ROSANA D. MASINGALE,<br>　　　　　　Appellant,<br>v.<br>JOHN D. MUNDING, Chapter 7 Trustee;<br>STATE OF WASHINGTON; GREGORY<br>M. GARVIN, Acting U.S. Trustee,<br>　　　　　　Appellees. | **OPINION** |

Appeal from the United States Bankruptcy Court
for the Eastern District of Washington
Frederick P. Corbit, Bankruptcy Judge, Presiding

APPEARANCES:

Darren D. Digiacinto of Winston & Cashatt argued on behalf of appellant;
Thomas Buford of Bush Kornfeld, LLP argued on behalf of appellee John
D. Munding, Chapter 7 Trustee; Dina L. Yunker argued on behalf of
appellee State of Washington.

Before: FARIS, LAFFERTY, and BRAND, Bankruptcy Judges.

FARIS, Bankruptcy Judge:

**INTRODUCTION**

Monte L. Masingale and Rosana D. Masingale filed a chapter 11[1] bankruptcy petition and claimed a "100% of FMV [fair market value]" exemption in their homestead. No one objected. Years later, the bankruptcy court converted the case to chapter 7. Mrs. Masingale[2] and the chapter 7 trustee disputed the amount of the homestead exemption to which Mrs. Masingale was entitled: the chapter 7 trustee argued that she was bound by the statutory limit under § 522(d)(1), but Mrs. Masingale contended that she was entitled to the entire fair market value of the property, because no one had objected to the claimed homestead exemption. The bankruptcy court agreed with the chapter 7 trustee and approved his request to sell the property, limiting the homestead exemption to $45,950.

Mrs. Masingale appeals, arguing that the bankruptcy court erred in determining the amount of the homestead exemption. We agree with Mrs. Masingale. We REVERSE the portions of the order on appeal that determine the amount of the homestead exemption and REMAND. We publish to explain the effect of a "100% of FMV" exemption claim and to reiterate that parties must timely object to any improper exemption claim,

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] Mr. Masingale passed away in July 2016 during the pendency of the bankruptcy case. Mrs. Masingale is the only appellant in this appeal.

no matter how frivolous.

## FACTS

## A.   The chapter 11 bankruptcy case

In 2015, the Masingales filed a chapter 11 bankruptcy petition. In their Schedule A, they listed their residential real property in Greenacres, Washington. They reported that the property was worth $165,430 and was encumbered by a $130,724 mortgage lien. In their schedule of exempt property (Schedule C), they claimed a homestead exemption pursuant to § 522(d)(1) for "100% of FMV" as follows:

| DESCRIPTION OF PROPERTY | SPECIFY LAW PROVIDING EACH EXEMPTION | VALUE OF CLAIMED EXEMPTION | CURRENT VALUE OF PROPERTY WITHOUT DEDUCTING EXEMPTION |
|---|---|---|---|
| Debtor's Home 19716 E. 8th Avenue Greenacres, WA 99016 Legally described on Exhibit "4" attached | 11 USC § 522(d)(1) | 100% of FMV | $165,430.00 |

The Masingales' meeting of creditors concluded on November 25, 2015. Creditors thereafter had thirty days to object to the claimed exemptions; no one objected to any exemption.

Mr. Masingale passed away in July 2016. Mrs. Masingale continued to live in the home and prosecute the bankruptcy case.

On August 23, 2017, the court confirmed Mrs. Masingale's chapter 11 plan. The plan provided that Mrs. Masingale would retain the home and pay in full the claims secured by the property. The plan discussed the claimed exemptions in a muddled fashion; it appeared to claim the entire fair market value of the home as exempt but acknowledged that the

3

property would not be exempt until all creditors were paid in full.

**B.    Conversion to chapter 7**

Mrs. Masingale was unable to complete the plan. The U.S. Trustee moved to dismiss or convert the case for failure to file required reports. On November 19, 2018, over a year after plan confirmation, the bankruptcy court converted the case to one under chapter 7. John D. Munding became chapter 7 trustee ("Trustee").

In September 2021, Mrs. Masingale filed a motion to sell her home for $400,500. She requested that the bankruptcy court confirm that the net proceeds of the sale would be fully exempt.

The Trustee objected to the motion to sell. Among other things, he argued that the proceeds were property of the bankruptcy estate, because the homestead exemption was fixed on the petition date. He also pointed out that the residence was property of the bankruptcy estate, and only the chapter 7 trustee has the authority to sell the property.

Thereafter, Mrs. Masingale withdrew her motion to sell.

**C.    The motion to compel abandonment of the homestead**

Instead, Mrs. Masingale filed a motion to compel the Trustee to abandon her home ("Motion to Abandon"). She claimed that "100% of FMV" of the home was exempt because no one had objected to the Masingales' claimed homestead exemption.

Mrs. Masingale explained that, under § 522(*l*), property that the debtor claims as exempt is exempt unless a party in interest objects. She

4

said that she and her husband had complied with the applicable rules to schedule their real property and claim the homestead exemption. No party in interest objected to their claimed exemptions, and Rule 1019(2)(B)(i) bars a new period for objections after conversion to a chapter 7 case if the case was converted more than one year after plan confirmation.

Mrs. Masingale relied on *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992), for the proposition that even a blatantly improper exemption claim survives if no one objects. She also pointed to *Schwab v. Reilly*, 560 U.S. 770 (2010), as support for her position that a claimed exemption for "100% of FMV" was valid. In that case, the U.S. Supreme Court seemingly approved of the term "100% of FMV" to indicate when a debtor attempts "to exempt the full market value of the asset or the asset itself." *Id.* at 792.

The Trustee objected to the Motion to Abandon. He argued that the homestead exemption was fixed on the petition date at $45,950 under § 522(d)(1); any postpetition appreciation inured to the benefit of the bankruptcy estate; and the property was of significant value to the estate.

The State of Washington Attorney General's Civil Rights Unit (the "State")[3] also objected to the Motion to Abandon and joined in the Trustee's objection. It argued that the cited language from *Schwab* was dicta or a "suggestion." Alternatively, the State contended that the schedules were ambiguous and must be construed against the debtors. Finally, it

---

[3] The State held two claims against the Masingales: one for unpaid sales taxes owed by their businesses and the other for sexual harassment of female employees.

argued that the U.S. Supreme Court's *Taylor* decision was inapposite because, unlike in that case, creditors were prevented from objecting to the Masingales' exemptions post-conversion under Rule 1019(2)(B)(i).

## D.    The motion to sell

Shortly thereafter, the Trustee filed a motion to sell Mrs. Masingale's home ("Motion to Sell"). He again argued that, under § 522(d), the maximum allowed homestead exemption due to Mrs. Masingale was $45,950. The State supported the Motion to Sell.

Mrs. Masingale objected to the Trustee's Motion to Sell. She argued that "[t]he real property is Debtor's Home and is fully exempt property" and incorporated her earlier arguments and filings.

## E.    The bankruptcy court's order denying the Motion to Abandon and granting the Motion to Sell

After holding a hearing,[4] the bankruptcy court denied the Motion to Abandon and granted the Motion to Sell. It held that the issue key to both motions was the value of the homestead exemption: if it was unlimited, as Mrs. Masingale claimed, the court could order the Trustee to abandon the estate's interest in the property and disallow a sale; but if it was limited to $45,950, the Trustee could sell the property and recover equity for the benefit of the bankruptcy estate.

---

[4] Mrs. Masingale did not provide us with a copy of the hearing transcript. We may presume that there is nothing in the missing transcript that would help the parties' positions on appeal. *U.S. Dep't of Educ. v. Carrion (In re Carrion)*, 601 B.R. 523, 525 n.3 (9th Cir. BAP 2019).

The bankruptcy court first held that the absence of an objection to the homestead exemption claim does not result in the entire property being removed from the bankruptcy estate. It relied on *Gebhart v. Gaughan (In re Gebhart)*, 621 F.3d 1206 (9th Cir. 2010), for the proposition that, even when no party objected to the homestead exemption claim and a homestead increased in value, the debtor's exemption removed from the estate only a fixed interest in the property equal to the value of the exemption claimed but did not remove the entire asset from the estate.

Second, the bankruptcy court held that, when the Masingales filed their petition in 2015, their claim of "100% of FMV" was limited to $45,950 under § 522(d). It rejected a trend among debtors to claim "100% of FMV" pursuant to dicta in *Schwab*, noting that many of those attempts were unsuccessful.

Third, the bankruptcy court held that the increase in the home's equity between 2015 and 2022 belongs to the bankruptcy estate because § 541(a) includes the "appreciation in value of a debtor's home." It authorized the Trustee to pay Mrs. Masingale the maximum allowed homestead exemption of $45,950.

Mrs. Masingale timely appealed.

## F.    Sale of Mrs. Masingale's home

The Trustee reported that he sold Mrs. Masingale's home for $422,000. The net proceeds of the sale (after payment of the senior lien and

costs of sale) totaled $222,783.34.[5] The Trustee represents that "[s]ale proceeds were disbursed in accordance with the [order on appeal]."

On Mrs. Masingale's motion, the bankruptcy court issued an order directing the Trustee to hold the proceeds of the sale pending appeal and further court order. The record does not reveal exactly how much money was disbursed or how much of the sale proceeds remains with the estate.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B) and (N). Subject to our discussion of mootness below, we have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in limiting the Masingales' homestead exemption to $45,950.

## STANDARD OF REVIEW

We review de novo the bankruptcy court's interpretation of the Bankruptcy Code and Rules. *Temecula v. LPM Corp. (In re LPM Corp.)*, 300 F.3d 1134, 1136 (9th Cir. 2002). "The determination of a homestead exemption based on undisputed facts is a legal conclusion interpreting statutory construction which is reviewed de novo." *Klein v. Chappell (In re Chappell)*, 373 B.R. 73, 76 (9th Cir. BAP 2007), *aff'd sub nom. In re Gebhart*, 621 F.3d 1206 (9th Cir. 2010).

---

[5] The Trustee filed a motion to supplement the record with two documents, including the notice of sale and attached settlement statement. We GRANT the motion.

"De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

## DISCUSSION

**A. This appeal is not moot.**

The Trustee argues that we should dismiss this appeal because it is both statutorily and equitably moot. We disagree on both counts.

First, the Trustee argues that the appeal is statutorily moot under § 363(m) because Mrs. Masingale did not seek a stay pending appeal and the Trustee sold the property to a third party. He contends that the sale has been consummated and "the proceeds disbursed[.]"

"We cannot exercise jurisdiction over a moot appeal." *Ellis v. Yu (In re Ellis)*, 523 B.R. 673, 677 (9th Cir. BAP 2014). Section § 363(m) provides that

> reversal or modification on appeal of an authorization under [§ 363(b) or (c)] of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith . . . unless such authorization and such sale or lease were stayed pending appeal.

*See also Paulman v. Gateway Venture Partners III, LP (In re Filtercorp, Inc.)*, 163 F.3d 570, 576 (9th Cir. 1998) (When a "sale of assets is made to a good faith purchaser, it may not be modified or set aside unless the sale was stayed pending appeal."). In other words, § 363(m) protects the interests of good-faith purchasers who buy property pursuant to a sale under § 363(b) when

9

a party in interest has failed to stay the sale pending appeal.

Mrs. Masingale is not seeking to undo the sale; rather, she only challenges the amount of homestead exemption and the distribution of the sale proceeds. Because Mrs. Masingale does not challenge "the validity of the sale," § 363(m) is inapplicable.

Second, the Trustee argues that this appeal is equitably moot, because it would be inequitable to the third-party purchasers to undo the sale. Furthermore, Washington law does not allow the reversal of a sale transaction or recovery of money paid to third parties. The Trustee's argument again misstates Mrs. Masingale's position on appeal; she does not seek to undo the sale.

Under the equitable mootness doctrine, we may "dismiss appeals of bankruptcy matters when there has been a 'comprehensive change of circumstances . . . so as to render it inequitable for this court to consider the merits of the appeal.'" *Rev Op Grp. v. ML Manager LLC (In re Mortgs. Ltd.)*, 771 F.3d 1211, 1214 (9th Cir. 2014) (quoting *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 880 (9th Cir. 2012)). "An appeal is equitably moot if the case presents 'transactions that are so complex or difficult to unwind' that 'debtors, creditors, and third parties are entitled to rely on [the] final bankruptcy court order.'" *Id.* at 1215 (quoting *In re Thorpe Insulation Co.*, 677 F.3d at 880). To determine whether an appeal is equitably moot, the court must consider (among other factors) "whether the bankruptcy court can fashion effective and equitable relief

10

without completely knocking the props out from under the plan and thereby creating an uncontrollable situation for the bankruptcy court." *In re Thorpe Insulation Co.*, 677 F.3d at 881.

Granting the relief that Mrs. Masingale requests would not create the type of "uncontrollable situation" that the equitable mootness doctrine addresses. As noted above, Mrs. Masingale is not seeking to undo the sale or recover money paid to her mortgage lender. Additionally, the estate received net proceeds of approximately $222,000 from the sale of Mrs. Masingale's home, and despite the Trustee's representation that he distributed an unspecified amount of the proceeds, there appears to be remaining funds that the court directed the Trustee to hold pending this appeal. Even if the Trustee had fully distributed the sale proceeds, he has not shown that it would be impossible or inequitable to claw back those payments from administrative and unsecured creditors. Thus, the Trustee has failed to demonstrate that equitable mootness requires the dismissal of this appeal.

**B.** **The bankruptcy court erred in holding that the homestead exemption was limited to the statutory dollar limit.**

Mrs. Masingale argues that the bankruptcy court erred in limiting the homestead exemption to $45,950. She contends that no one objected to the claim of "100% of FMV," so the Masingales were entitled to the full amount of the claimed exemption even if it exceeded the statutory limits. This appeal thus presents two questions: (1) whether the absence of an objection

11

means that the Masingales' exemption claim is valid even though it is larger than the law allows; and (2) whether the Masingales claimed as exempt the full fair market value of the property at the time of the sale, rather than the value on the petition date. We answer both questions in the affirmative.

1.    **The Masingales' exemption claim was no longer contestable.**

Section 522(*l*) and the Supreme Court's decision in *Taylor* foreclose any debate on the first question. Section 522 governs the allowance of exemptions in bankruptcy. Section 522(*l*) provides that "[t]he debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. . . . Unless a party in interest objects, the property claimed as exempt on such list is exempt."

A party in interest may object to any of the claimed exemptions within thirty days after the conclusion of the § 341 meeting of creditors. Rule 4003(b)(1). When a chapter 11 case is converted to one under chapter 7, parties in interest have a new thirty-day period to object to a claimed exemption, unless "the case was converted to chapter 7 more than one year after the entry of the first order confirming a plan . . . ." Rule 1019(2)(B)(i).

*Taylor* holds that § 522(*l*) means what it says: if no one files a timely objection, an exemption claim is valid even if it had no "colorable basis" in the law. In that case, the chapter 7 debtor claimed as exempt her expected recovery in a pending lawsuit and listed the value as "unknown." 503 U.S. at 640. No one objected to the exemption claim. *Id.* at 641.

Ultimately, the debtor recovered $110,000 and paid most of it to her attorneys. The trustee demanded that the attorneys turn over the proceeds as property of the estate. The attorneys refused, asserting that the debtor had claimed the litigation proceeds as exempt. *Id.* The bankruptcy court and district court both sided with the trustee, but the Third Circuit Court of Appeals reversed, holding that the debtor had claimed the proceeds from the lawsuit as exempt, and the trustee had failed to object timely to the claimed exemption. *Id.* at 641-42.

The U.S. Supreme Court affirmed the Third Circuit. It noted that the statute only permitted the debtor to exempt a small portion of the proceeds. Nevertheless, the trustee's failure to object precluded him from later challenging the claimed exemption amount. *Id.* at 642 (stating that the trustee "apparently could have made a valid objection under § 522(*l*) and Rule 4003 if he had acted promptly. We hold, however, that his failure to do so prevents him from challenging the validity of the exemption now"). The Court held that the trustee "cannot contest the exemption at this time whether or not [the debtor] had a colorable statutory basis for claiming it." *Id.* at 643-44. It observed that "[d]eadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." *Id.* at 644.

The Court was similarly unconvinced by the trustee's policy argument that the lack of a good faith requirement would create "improper incentives" and encourage debtors to claim exemptions to which they were not entitled in the hopes that parties in interest would fail to timely object.

13

The Court reasoned that "[d]ebtors and their attorneys face penalties under various provisions for engaging in improper conduct in bankruptcy proceedings. These provisions may limit bad-faith claims of exemptions by debtors. To the extent that they do not, Congress may enact comparable provisions to address the difficulties that [the trustee] predicts will follow our decision." *Id.* at 644-45 (citations omitted).

In the present case, neither the State nor the Trustee timely objected. The Trustee attempts to avoid the consequences of *Taylor* by pointing out that he was not appointed until after the case was converted to chapter 7, so he had no opportunity to object during the chapter 11 phase of the case. But, under Rule 1019(2)(B)(i), parties in interest are not afforded a new time period to object to exemptions when cases are converted from chapter 11 to chapter 7 more than a year after plan confirmation. We do not fault the Trustee for failing to object before he took office; nevertheless, the rules make clear that he cannot object now. Because no party in interest timely objected to the homestead exemption, it is not subject to challenge.

## 2. The Masingales exempted their home's entire fair market value.

In *Schwab*, the U.S. Supreme Court largely answered the second question. It began by reaffirming *Taylor*'s holding, stating that, "[i]f an interested party fails to object within the time allowed, a claimed exemption will exclude the subject property from the estate even if the exemption's value exceeds what the Code permits." 560 U.S. at 775-76. But

14

the Court clarified that, when a debtor claims an exemption that is facially within the dollar limits of § 522(d), parties in interest do not have an obligation to object. In so ruling, the Court stated that a debtor may claim "100% of FMV" to put parties in interest on notice that he intends to claim the full value of the property as exempt.

In that case, the chapter 7 debtor scheduled her business equipment, which she valued at $10,718. She claimed exemptions in the equipment for the same dollar amount. *Id.* at 775. The chapter 7 trustee did not object, but he later learned that the value of the equipment may be much higher than the debtor's valuation. *Id.* at 776. The trustee sought to sell the equipment and pay the debtor her claimed $10,718 exemption, with the balance inuring to the benefit of the estate. The debtor objected, arguing that the trustee was on notice that she was exempting the full value of the equipment, so the trustee's failure to object to her claim of exemption prevented him from recovering any portion of the equipment for the estate.

The bankruptcy court denied the trustee's motion, and the district court affirmed. The Third Circuit similarly affirmed, relying on *Taylor* and holding that, by equating the $10,718 exemption with the stated value of the equipment, the debtor made known her intent to exempt the equipment's full value. *Id.* at 777.

The Supreme Court held that the Third Circuit misinterpreted *Taylor* and reversed. It could not accept the debtor's position that her schedules evidenced an intent to possibly claim more than the statutes allowed. It

15

stated that the trustee "had no duty to object to the property [the debtor] claimed as exempt . . . because the stated value of each interest, and thus of the 'property claimed as exempt,' was within the limits the Code allows." *Id.* at 782. In other words, because the claimed exemption was within the statutory limits, the trustee was not required to object.

The Court distinguished *Taylor*, because the debtor there listed the "value claimed exempt" as "unknown," and the issue concerned "a trustee's obligation to object to the debtor's entry of a 'value claimed exempt' that was not plainly within the limits the Code allows." *Id.* at 788-89. Conversely, the debtor in *Schwab* claimed a particular dollar amount for exemptions that were "facially within the limits the Code prescribes and raise no warning flags that warranted an objection." *Id.* at 789. Thus, *Taylor* "establishes and applies the straightforward proposition that an interested party must object to a claimed exemption if the amount the debtor lists as the 'value claimed exempt' is not within statutory limits, a test the value ($ unknown) in *Taylor* failed, and the values ($8,868 and $1,850) in this case pass." *Id.* at 790.

Crucial to this appeal, the Court described what the debtor should have done to claim the entire asset as exempt:

> Where, as here, it is important to the debtor to exempt the **full market value of the asset** or the asset itself, our decision will encourage the debtor to declare the value of her claimed exemption in a manner that makes the scope of the exemption clear, for example, **by listing the exempt value as "full fair**

16

**market value (FMV)" or "100% of FMV."** Such a declaration will encourage the trustee to object promptly to the exemption if he wishes to challenge it and preserve for the estate any value in the asset beyond relevant statutory limits. **If the trustee fails to object, or if the trustee objects and the objection is overruled, the debtor will be entitled to exclude the full value of the asset.** If the trustee objects and the objection is sustained, the debtor will be required either to forfeit the portion of the exemption that exceeds the statutory allowance, or to revise other exemptions or arrangements with her creditors to permit the exemption. *See* Fed. Rule Bkrtcy. Proc. 1009(a). Either result will facilitate the expeditious and final disposition of assets, and thus enable the debtor (and the debtor's creditors) to achieve a fresh start free of the finality and clouded-title concerns [the debtor] describes.

*Id.* at 792-94 (footnotes omitted) (emphases added).

The Masingales followed the Supreme Court's suggestion to the letter. They wanted to claim the entire value of their home as exempt, so on Schedule C they claimed an exemption in an amount equal to "100% of FMV." Under *Schwab*, this notation is proper to indicate an intent "to exempt the **full market value of the asset** or the asset itself," *id.* at 792 (emphasis added), and should the parties in interest fail to object, "the debtor will be entitled to exclude the **full value of the asset**," *id.* at 793 (emphasis added).

The Trustee attempts to distinguish *Taylor* and *Schwab*. He argues that *Taylor* concerned an exemption claim valued at "unknown," while the Masingales claimed the homestead exemption pursuant to the statutory

17

limits of § 522(d)(1). Further, he argues that *Schwab* does not support an unlimited homestead exemption.

Although the Masingales cited § 522(d)(1) as the statutory basis for their homestead exemption, the "100% of FMV" notation made clear that they were attempting to exempt the "full market value of the asset," as explained in *Schwab*.[6] There is no meaningful difference between this tactic and the *Taylor* debtor's "unknown" value, which the Court held sufficiently indicated the debtor's intent to exempt the entirety of the litigation proceeds despite the dollar limits of § 522(d). As the Court stated in *Schwab*, "an interested party must object to a claimed exemption if the amount the debtor lists as the 'value claimed exempt' is not within

---

[6] The bankruptcy court ignored this language in *Schwab*, stating instead that the "100% of FMV" discussion was dicta and that courts have rejected subsequent attempts by debtors to claim "100% of FMV." We do not agree that we can so easily reject language that the Supreme Court has approved for this very situation.

Furthermore, its citation to our unpublished decision, *Messer v. Maney (In re Messer)*, BAP Nos. AZ-11-1505-JuPaD, AZ-11-03007-JuPaD, 2012 WL 762828 (9th Cir. BAP Mar. 9, 2012), misses the mark. In that case, we sustained the chapter 7 trustee's objection to the debtor's exemption claim of 100% of the fair market value of her automobile valued at $12,000 because it exceeded the Arizona state exemption of $5,000. *Id.* at *1. We rejected the debtor's attempt to rely on the language in *Schwab* concerning the use of "100% of FMV," because Arizona law expressly limited the exemptions to a specific dollar value. *Id.* at *3. But *Messer* differs from this case because the trustee there timely objected to the debtor's claim of exemption, and the bankruptcy court properly sustained the objection. Had a party in interest timely objected to the Masingales' homestead exemption that blatantly exceeded the statutory limits, the bankruptcy court probably would and should have sustained that objection. But because there was no timely objection, *Taylor* directs that the Masingales were entitled to the full value of their claimed homestead exemption.

statutory limits . . . ." 560 U.S. at 790. Like an "unknown" value, "100% of FMV" is not a dollar value; it can only refer to the value of the entire asset; and it is not tied to the statutory limits. Even if there is no colorable statutory basis for the claimed exemption, *Taylor* directs that we must allow the exemption.

The State argues that it had no reason to object to the claimed homestead exemption based on information contained in the Masingales' other schedules. The State points out that, in their schedules of assets and liabilities, the Masingales said that the property was worth $165,430 and was subject to secured debt of $130,724; this left $34,706 of equity. Because this amount is less than the statutory exemption ($45,950), the State claims that it did not need to object pursuant to *Schwab*. The Trustee makes a similar argument that, based on representations in their disclosure statement and plan, the Masingales' exemption claim was only $18,163.

These arguments disregard the fact that, when the Masingales claimed the exemptions on Schedule C, they did not claim any specific dollar amount, but rather claimed "100% of FMV." This was not ambiguous; *Schwab*, decided five years prior to the petition date, counseled that such a statement makes "clear" to creditors that the debtor intends to "exempt the full market value of the asset . . . ." *Id.* at 792. If the State disagreed with the exemption claim, or was not sure how much the Masingales were claiming, the State should have objected and allowed the bankruptcy court to resolve the matter. *See Taylor*, 503 U.S. at 644. The State

19

did not do so within the thirty-day objection period, so it is foreclosed from now challenging the homestead exemption claim.

These arguments are also wrong for the same reason that the debtor's position in *Schwab* was wrong. In *Schwab*, the debtor argued (in effect) that, although the schedule of exempt property claimed a fixed dollar amount, the court should have inferred from other schedules that the debtor was claiming the full value of the property, whatever it turned out to be. The Supreme Court rejected this position. Trustees and creditors may not rely on information from other schedules when deciding whether to object to an exemption claimed in the schedule filed for that purpose. *See Schwab*, 560 U.S. at 784-85. After all, § 522(*l*) provides that the debtor must file a "list" of exempt property and that, "[u]nless a party in interest objects, the property claimed as exempt **on such list** is exempt." (Emphasis added.)

The Trustee argues that our decision in *Chappell*, 373 B.R. 73, and the Ninth Circuit's decision in *Gebhart*, 621 F.3d 1206, dictate that the value of the homestead exemption may not exceed the statutory dollar amount. Neither of those cases controls the result in this appeal. In *Chappell*, the debtors claimed a homestead exemption totaling $21,511.25, which was less than the statutory limit of $36,900. 373 B.R. at 77-78. When their homestead appreciated in value, the debtors argued that their exemption, at the time it was claimed, was their entire interest in the property, such that it withdrew the property from the bankruptcy estate. We disagreed, holding that the debtors never indicated an intent to claim an exemption in excess of the

20

dollar amount listed in their Schedule C and, at any rate, could not exceed the statutory limit of $36,900. We distinguished *Taylor* and pointed out that "the debtors here claimed an exemption in a specified amount. The basis for their exemption claim in their residence was valid under § 522(d)(1)." *Id.* at 78.

*Gebhart* was a consolidated appeal including our decision in *Chappell*. In both appeals, the debtors claimed dollar-figure homestead exemptions below the statutory limits. The homes subsequently increased in value, and the trustees sought court approval to sell the property to realize the increased value for the benefit of the estate. The Ninth Circuit held that the homestead exemptions in those cases "do not permit the exemption of entire properties, but rather specific dollar amounts." 621 F.3d at 1210. It held that "the fact that the value of the claimed exemption plus the amount of the encumbrances on the debtor's residence was, in each case, equal to the market value of the residence at the time of filing the petition did *not* remove the entire asset from the estate." *Id.*

In short, *Chappell* and *Gebhart* stand for the uncontroversial proposition that a debtor claiming a dollar-figure exemption within the statutory limits is not entitled to recover anything more than the claimed amount. This is exactly consistent with *Schwab*, and it does not address a case in which the debtor exempts "100% of FMV."

Finally, the Trustee argues that judicial estoppel prevents Mrs. Masingale from deviating from her previous representation that the

homestead exemption was limited to $18,163. We see no such representation; when asked to claim exemptions, the Masingales always claimed that the entire value of the property was exempt, so there is no basis for judicial estoppel. *See In re Carrion*, 601 B.R. at 529 (stating that the elements of judicial estoppel are: "(1) whether a party's later position is 'clearly inconsistent' with its original position; (2) whether the party has successfully persuaded the court of the earlier position; and (3) whether allowing the inconsistent position would allow the party to 'derive an unfair advantage or impose an unfair detriment on the opposing party'" and finding that the debtor did not take inconsistent positions).[7]

### 3. The "snapshot rule" does not change the result.

The bankruptcy court held that the Masingales' exemption was limited to the value of the property at the petition date and did not include any appreciation from the petition date until the sale, almost seven years later. The difference is significant: according to the Masingales' schedules, the property was worth $165,430 on the petition date in 2015, while the Trustee sold it for $422,000 in 2022.

Under the so-called "snapshot rule," a debtor's claimed exemptions are fixed on the petition date. *See Wilson v. Rigby*, 909 F.3d 306, 308 (9th Cir. 2018) ("This rule determines not only what exemptions a debtor may claim, it also fixes the value that a debtor is entitled to claim in her exemptions.");

---

[7] Furthermore, we note that the confusing and contradictory nature of the plan makes it difficult to determine exactly what the Masingales proposed.

*Klein v. Anderson (In re Anderson)*, 613 B.R. 279, 282 (9th Cir. BAP 2020) ("When the homeowner files bankruptcy, her right to claim an exemption is fixed as of the petition date; this is often referred to as the 'snapshot rule.'"), *aff'd*, 988 F.3d 1210 (9th Cir. 2021); *In re Cofer*, 625 B.R. 194, 199 (Bankr. D. Idaho 2021) ("[E]xemptions are determined as of the petition date pursuant to § 522(a)(2), and § 348(a) makes clear that conversion does not change the date of the petition.").

Moreover, it is well settled that postpetition appreciation of estate property inures to the benefit of the bankruptcy estate. *Wilson*, 909 F.3d at 309 ("[A]ll '[p]roceeds, product, offspring, rents, or profits' enure to the bankruptcy estate. . . . This includes the appreciation in value of a debtor's home.").

But these decisions do not squarely address the question before us. The snapshot rule fixes the point in time that defines the exemptions that a debtor is **entitled** to take. It says nothing about what happens when a debtor claims an exemption in postpetition appreciation to which the debtor is **not entitled** and no one timely objects.

As a matter of first impression, we hold that the Masingales' claim of an exemption equal to "100% of FMV" includes postpetition appreciation and becomes incontestable if there is no timely objection. The snapshot rule is one of the limits on a debtor's entitlement to exemptions. *Taylor* holds that, if no one objects, the debtor can get the benefit of exemptions to which the debtor is not entitled. In other words, in order to get the benefit of the

23

snapshot rule, a trustee or party in interest must object to an exemption claim that contradicts that rule.

*Gebhart* is not to the contrary. *Gebhart* states that, "[e]ven when a debtor claims an exemption in an amount that is equal to the full value of the property as stated in the petition and the trustee fails to object, the asset itself remains in the estate, at least if its value at the time of filing is in fact higher than the exemption amount." 621 F.3d at 1210. The Ninth Circuit stated that "what is removed from the estate is an 'interest' in the property equal to the value of the exemption claimed at filing" and that "the fact that the value of the claimed exemption plus the amount of the encumbrances on the debtor's residence was, in each case, equal to the market value of the residence at the time of filing the petition did not remove the entire asset from the estate." *Id.* But the debtors in *Gebhart* claimed a fixed dollar amount as exempt. *Id.* at 1208-09. In contrast, the Masingales claimed the entire value of the property as exempt and did not specify a dollar amount. *Taylor* holds that parties may not challenge that claim at this time.

## CONCLUSION

We do not condone the conduct of the Masingales and their counsel, and we do not mean to immunize them from all consequences for making a baseless claim of exemption. Improperly claiming exemptions, in the hope that no one will object, is risky at best. As the Court recognized in *Taylor*, 503 U.S. at 644, bankruptcy courts can impose penalties against parties and attorneys who make assertions that lack any colorable legal basis or who

24

engage in improper or bad-faith conduct. *See, e.g.,* § 727(a)(4)(B) (authorizing denial of discharge for presenting fraudulent claims); Rule 1008 (requiring filings to "be verified or contain an unsworn declaration" of truthfulness under penalty of perjury); Rule 9011 (authorizing sanctions for signing certain documents not "well grounded in fact and . . . warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law"); 18 U.S.C. § 152 (imposing criminal penalties for fraud in bankruptcy cases). Inherent power sanctions may also be available. *See Stanley v. Mason* (*In re BCB Contracting Servs., LLC)*, BAP No. AZ-21-1254-BSF, 2022 WL 1198232, at *5 (9th Cir. BAP Apr. 21, 2022) ("A court may sanction under its inherent power even when the same conduct may also be punishable under another sanctioning statute or rule, such as Rule 9011." (citation omitted)), *appeal filed*, No. 22-60014 (9th Cir. Jun. 6, 2022).

The bankruptcy court erred in limiting the Masingales' homestead exemption to the statutory limit of $45,950. We REVERSE the portion of the bankruptcy court's order that determined the amount of the Masingales' homestead exemption, we AFFIRM the order in all other respects, and we REMAND so the bankruptcy court may determine how to enforce the exemption and what other remedies, if any, are appropriate.