NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 5 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JEFFREY B. GUINN, <br><br> Appellant, <br><br> v. <br><br> CDR INVESTMENTS, LLC; CHARLES L. RUTHE IRA; FRANK E. GRANIERI, Revocable Trust; CHARLES L. RUTHE TRUST, <br><br> Appellees. | No. 23-16220 <br><br> D.C. No. 2:19-cv-00649-CDS <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Nevada
Cristina D. Silva, District Judge, Presiding

Submitted April 2, 2024[**]
Pasadena, California

Before: R. NELSON, VANDYKE, and SANCHEZ, Circuit Judges.

Appellant Jeffrey Guinn formerly owned and operated Aspen Financial

Services, LLC, which brokered and serviced "hard money" loans between individual

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

investors from his personal network and commercial real estate developers. Beginning in 2000, the Ruthes, their associated trusts and entities, and several family members invested millions through Aspen, often making their investment decisions based on only a few details shared by Aspen employees on solicitation calls. The Ruthes stopped investing with Aspen after their relationship with Guinn fell apart in 2007. At that time, they still had money invested in many Aspen-brokered loans, twenty-six of which were never fully repaid because of the Great Recession. Aspen eventually closed its doors in 2013, and Guinn filed for bankruptcy soon thereafter.

The Ruthes intervened in Guinn's bankruptcy proceedings, alleging he owed them a nondischargeable debt under 11 U.S.C. § 523(a) because he fraudulently induced their investment in all twenty-six unpaid loans. After a two-week bench trial, the bankruptcy court rejected most of the Ruthes' claims and held Guinn liable for fraudulently concealing facts about just four of the unpaid loans. As to three of the four loans, the bankruptcy court concluded that Guinn fraudulently concealed the real estate collateral's proper valuation by relying on unrealistically high appraisal values, and regarding the final loan, the bankruptcy court concluded that Guinn omitted key details about the project suggesting its immediate financial future was uncertain.

Guinn appealed to the district court, which affirmed. Before this court, the parties dispute (1) whether the bankruptcy court applied the correct legal standards

to the Ruthes' fraud claims, which arise under Nevada law, and (2) whether sufficient evidence supported the causation and reliance prongs of the court's conclusions regarding Guinn's fraudulent concealments. We have jurisdiction under 28 U.S.C. § 158(d)(1). We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo, *see In re Gebhart*, 621 F.3d 1206, 1209 (9th Cir. 2010), and we may affirm the bankruptcy court's decision on any ground fairly supported by the record, *see In re Warren*, 568 F.3d 1113, 1116 (9th Cir. 2009). We affirm for the reasons below.

1. To survive a chapter 7 bankruptcy proceeding, a creditor must demonstrate the existence of a nondischargeable debt. "[T]here are two distinct issues to consider in the dischargeability analysis: first, the establishment of the debt itself, … and, second, a determination as to the nature of that debt." *Banks v. Gill Distrib. Ctrs., Inc.*, 263 F.3d 862, 868 (9th Cir. 2001). Though the existence of a debt is a question of state law and its dischargeability is a question of federal law, the bankruptcy court correctly noted that the required showings "largely mirror" one another. As relevant here, both require evidence of reliance and a causal connection between the alleged fraud and the damages incurred.[1]

---

[1] *Compare Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 110 (Nev. 1998), *overruled on other grounds by GES, Inc. v. Corbitt*, 21 P.3d 11 (Nev. 2001) (requiring plaintiffs alleging fraudulent concealment to demonstrate they were "unaware of the fact and would have acted differently if [they] had known of the concealed or suppressed

Federal law, however, differs from Nevada law in its more relaxed approach to demonstrating reliance. Under Nevada law, a plaintiff must demonstrate they actually relied on the misrepresentation. *Nev. Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1417 (D. Nev. 1995) ("Actual reliance on an alleged misrepresentation, or a sufficient showing that the fraud victim would have acted differently if there had not been fraudulent concealment, is also a required element.") (citing *Blanchard v. Blanchard*, 839 P.2d 1320, 1322 (Nev. 1992); *see also Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1154–55 (9th Cir. 2005). This court, by contrast, when applying federal law has adopted "a presumption of reliance … available to plaintiffs alleging … omissions of material fact," *Binder v. Gillespie*, 184 F.3d 1059, 1063 (9th Cir. 1999), meaning that "[r]eliance may be inferred from [the defendant's] failure to disclose the requisite material information," *In re Tallant*, 218 B.R. 58, 69 (B.A.P. 9th Cir. 1998). Thus, while the standard under Nevada law is subjective and plaintiff-dependent, the federal law inquiry instead depends largely on the totality of the circumstances and the objective materiality of the omission.

Guinn contends that the bankruptcy court applied the wrong legal standards to the Ruthes' Nevada fraud claims by (1) employing the federal presumption of reliance and (2) conducting its inquiry objectively, from the perspective of a

fact"), *with In re Slyman*, 234 F.3d 1081, 1085 (9th Cir. 2000) (requiring, for a creditor "to prevail on any claim arising under § 523(a)(2)(A)," evidence of "justifiable reliance by the creditor on the debtor's statement or conduct").

reasonable investor, rather than subjectively, from the Ruthes' perspective. But there is no indication the court made either of the errors pressed by Guinn.

First, the decision correctly recites the actual reliance standard required by Nevada law, *see Nev. Power Co.*, 891 F. Supp at 1415, and though it later notes that "positive proof of reliance is not a prerequisite to recovery," it is sufficiently clear in context that that statement was intended to describe the federal standard, not the standard under Nevada law. Second, the court nowhere presumed the Ruthes' reliance. Instead, the court found actual reliance based on its own assessment of what the Ruthes would have done, not just a presumption. And finally, in making such predictions, the court weighed the objective materiality of the omissions against unique aspects of the Ruthes' investment strategy, including their tendency to make very risky investments based on only a few pieces of basic information. Thus, its analysis was plaintiff-specific as required by Nevada law and did not mix the Nevada and federal law standards for proving reliance.

2. Next, Guinn contends that there was insufficient evidence to support the bankruptcy court's reliance and causation findings because the Ruthes did not introduce evidence "that any of the allegedly concealed information would have changed their investment decisions." It is true that, as Guinn repeatedly notes, the record demonstrates that the Ruthes grew complacent, demonstrated an extremely high risk tolerance, and generally neglected to perform any of their own due

5

diligence into the documents Aspen provided, instead choosing to rely solely on the few details Aspen provided in solicitation calls. But other evidence in the record nevertheless supports the bankruptcy court's conclusion that the Ruthes would have been unwilling to invest in the four unpaid loans had Aspen not concealed material facts about those loans.

First and foremost, Mrs. Ruthe testified that neither she nor Mr. Ruthe would have continued to invest had they known Aspen was inflating valuations or loaning money to troubled borrowers to enable them to continue to make interest payments on preexisting loans. This testimony is probative even though it does not mention the challenged loans by name because it informs how the Ruthes would have reacted had they known Guinn was committing the exact kind of fraudulent concealments involved with the four unpaid loans.

Guinn suggests Mrs. Ruthe's testimony is not credible because even if the information had been disclosed, the Ruthes would likely not have reviewed it. But the Ruthes' general failure to conduct due diligence is not a barrier to their justifiable reliance on the details provided in the solicitation call, some of which were affected by Guinn's omissions. *In re Eashai*, 87 F.3d 1082, 1090 (9th Cir. 1996) ("[A] person is justified in relying on a representation of fact although he might have ascertained the falsity of the representation had he made an investigation." (citations and internal quotation marks omitted)).

6

More importantly, Mrs. Ruthe's testimony is corroborated by other evidence suggesting that the Ruthes were not entirely unwilling to decline to invest with Aspen upon learning concerning information about investment opportunities. For example, in the summer of 2007, the Ruthes expressed concern about three aspects of Aspen's business practices: (1) its decision to broker "cash out" loans to borrowers to provide unrestricted funds, (2) its use of unrealistically high appraisals to inflate the value of the collateral securing the loans, and (3) its decision to broker refinance loans to beleaguered buyers who could not keep up with their preexisting loans. These aspects of Aspen's business, which are closely related to the omissions Guinn made to induce Ruthes' participation in the four unpaid loans, were so concerning to the Ruthes that they eventually ended their relationship with Guinn as a result. Thus, the Ruthes' response is sufficient evidence that they would have chosen not to invest in the four unpaid loans had Guinn divulged the concealed information. For these reasons, Guinn's evidentiary sufficiency challenge fails.

**AFFIRMED.**

7